UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AHAMAD R. ATKINS,

     Petitioner,

        v.                                                    Civil No. 17-cv-144-JPG

UNITED STATES OF AMERICA,                               Criminal No 14-cr-40061-JPG

     Respondent.

## MEMORANDUM AND ORDER

     This matter comes before the Court on petitioner Ahamad R. Atkins' motion to vacate, set

aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).

## I.    Background

     On September 24, 2014, the petitioner pled guilty without a plea agreement to one count of

conspiracy to distribute crack cocaine and heroin from 2012 to May 2014 in violation of 21 U.S.C.

§§ 841(a), 841(b)(1)(C) and 846.   At the sentencing on May 18, 2015, the Court heard testimony

from a number of witnesses regarding Atkins' relevant conduct and possession of a weapon.

Considering the testimony, the Court found that Atkins' relevant conduct, consisting of crack

cocaine, powder cocaine and heroin, equated to 4,135.8 of marihuana equivalent, which

established a base offense level of 32.   *See* U.S.S.G. § 2D1.1(c)(4).[1]   The Court raised the

offense level by 2 points under U.S.S.G. § 2D1.1(b)(1) because it found Atkins had possessed a

firearm in connection with his offense of conviction.   It further declined to award a 3-point

offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) because

it found Atkins had frivolously contested relevant conduct.   The total offense level of 34,

---

[1] All references in this order are to the 2014 version of the United States Sentencing Guidelines
Manual, which the Court used in determining Atkins' sentencing guideline range.

combined with Atkins' criminal history category of III, yielded a guideline sentencing range of 188 to 235 months. The Court sentenced Atkins to serve 216 months in prison, and written judgment was entered May 28, 2015.

The petitioner appealed his conviction to the United States Court of Appeals for the Seventh Circuit, which on March 18, 2016, dismissed the appeal as frivolous under the authority of *Anders v. California,* 386 U.S. 738 (1967). *See United States v. Atkins*, 640 F. App'x 549 (7th Cir. 2016). Atkins did not file a petition for a writ of *certiorari* to the United States Supreme Court. He filed this timely § 2255 motion on February 10, 2017.[2]

## II.    § 2255 Motion

In his lengthy § 2255 motion, the petitioner raises the following claims: [3]

1.  Prosecutorial misconduct in violation of the Fifth Amendment Due Process Clause for the following conduct:
    a.  charging Atkins with federal drug charges involving crack cocaine and making other prosecutorial decisions because of his race (Atkins is black);
    b.  housing Atkins before trial in a jail that had no law library;
    c.  tricking Atkins into not raising a racial profiling claim;
    d.  requesting that the Court deny Atkins an offense level reduction for acceptance of responsibility;
    e.  failing to give notice of evidence it planned to introduce at the sentencing hearing under Federal Rule of Evidence 404(b);
    f.  calling Adam Calvert as a witness at the sentencing hearing without disclosing him as a witness ahead of time, in violation of Federal Rules of Criminal Procedure 32(i)(2) and 26.2;
    g.  charging Atkins for a conspiracy that preceded the 4-month investigation of this case, introducing evidence of drug dealing from long before the charged conspiracy time frame, and presenting false or unreliable testimony to support relevant conduct;
    h.  knowingly presenting false testimony of government agents Chris Kelly and Bernie

---

[2] The copy of Atkins' § 2255 motion in the Court file has several pages out of order. The Court has considered the pages in the proper order according to the numbering system Atkins has used at the bottom of the pages.

[3] To facilitate the orderly analysis of Atkins' claims, the Court numbers them differently than Atkins did in his motion.

Gard to the grand jury and to the Court at sentencing;

     i. failing to prove beyond a reasonable doubt that Atkins possessed a firearm in the course of the conspiracy and instead proffering clearly improbable and unreliable testimony; and

     j. prosecuting Atkins with a deficient indictment that failed to allege detailed facts and circumstances of the charged conspiracy, any overt act done in furtherance of the conspiracy, or the time frame of the conspiracy;

2. Ineffective assistance of counsel in violation of the Sixth Amendment in the following ways:

     a. Assistant Federal Public Defender ("AFPD") Judith Kuenneke, Atkins' counsel for his arraignment, misled Atkins in her initial meeting with him into believing this was a case based on controlled drug buys and not "racial profiling," causing him to waive that defense;

     b. Eugene Howard, Atkins' counsel leading to and during his guilty plea, withheld discovery from Atkins before his guilty plea and coerced Atkins into entering a guilty plea without testing the Government's case;

     c. Rodney Holmes, Atkins' counsel leading to and during his sentencing,

        i. failed to review the prior case record when he began representing Atkins to discover prosecutorial misconduct and Kuenneke's ineffective assistance regarding waiver of a racial profiling defense and then failed to raise such a defense;

        ii. failed to file a motion to withdraw Atkins' guilty plea;

        iii. misled him into thinking he would receive a substantially lower sentence than he did;

        iv. failed to object to prosecutorial misconduct relating to, and to move to dismiss, the deficient indictment;

        v. failed to sufficiently consult with Atkins about objections to the Presentence Investigation Report's ("PSR") relevant conduct finding;

        vi. failed to object to prosecutorial misconduct for failing to request an offense level reduction for acceptance of responsibility;

        vii. failed to object to the lack of notice under Federal Rule of Evidence 404(b) of certain witnesses;

        viii. failed to object to the Government's failure to disclose Adam Calvert as a witness ahead of the sentencing hearing in violation of Federal Rules of Criminal Procedure 32(i)(2) and 26.2;

        ix. failed to object to the Government's introduction of evidence of conduct outside the dates of the investigation and/or the charged conspiracy to establish relevant conduct;

        x. failed to object to the Government's knowing presentation of the false testimony of Chris Kelly and Bernie Gard to the grand jury and to the Court at sentencing;

        xi. stipulated that Atkins possessed a firearm and failed to object to the 2-point offense level increase for possession of a firearm; and

            xii.  failed to act as counsel in good faith;

      d.  Elizabeth R. Pollock, Atkins' attorney on appeal, failed to raise on appeal the overinclusiveness of the Court's relevant conduct finding, the erroneous application of the 2-point offense level enhancement for possessing a firearm, the denial of a 3-point reduction for acceptance of responsibility, and the failure to allow Atkins to withdraw his guilty plea; and

3. The Court erred in including uncharged and unrelated conduct outside the time frame of the charged conspiracy in calculating relevant conduct drug amounts and did not make the finding necessary to support its conclusion.

## III.  Analysis

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"  *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court has determined that it is plain from the motion and the record of the prior proceedings that the petitioner is not entitled to relief on the grounds set forth above as Ground 1 in its entirety, Grounds 2a, 2c(i), 2c(iv), 2c(vi)-(xii) and 2d, and Ground 3 in its entirety. Before explaining this conclusion, it would be helpful to provide more detail regarding the prior proceedings in Atkins' criminal case.  The recitation of the facts is lengthy but essential to understanding the ground Atkins asserts as bases for § 2255 relief.

A.    Prior Proceedings

1.    The Indictment

Atkins was indicted in May 2014 in the Southern District of Illinois on one count of

conspiracy to distribute crack cocaine and heroin from 2012 to May 2014 in violation of 21 U.S.C.

§§ 841(a), 841(b)(1)(C) and 846.    Specifically, the indictment alleged:

> **THE GRAND .JURY CHARGES:**
> **Count l**
> **Conspiracy to Distribute Crack Cocaine and Heroin**
> From in or about 2012, through in or about May 2014, in Williamson
> County, within the Southern District of Illinois, and elsewhere,
>     AHAMAD R. ATKINS, a/k/a "Omar," a/k/a "O," and
>     ANTUAN D. PERKINS, a/k/a "Little Man,"
> defendants herein, did knowingly and intentionally combine, conspire, and agree
> with each other and with other persons known and unknown to the Grand Jury, to
> knowingly and intentionally distribute a mixture and substance containing cocaine
> base, in the form commonly called "crack cocaine," a Schedule II, Controlled
> Substance, and a mixture and substance containing a detectable amount of heroin, a
> Schedule I Controlled Substance, in violation of Title 21, United States Code,
> Sections 84l(a)(l) and 841(b)(l)(C); all in violation of Title 21, United States Code,
> Section 846 and Title 18, United States Code, Section 2.

Indictment 1 (Case No. 14-cr-40061-JPG, Doc. 1).    Atkins was arrested in the Chicago area in the

Northern District of Illinois on June 9, 2014, made an initial appearance there, was detained, and

was then removed to the Southern District of Illinois.

2.    The Arraignment

Once in this district, Atkins was arraigned before a magistrate judge on July 17, 2014.    As

is the custom in this district, an AFPD—Kuenneke, in this case—appeared on behalf of the

defendant for the arraignment until counsel for the remainder of the case could be appointed.

Typically, since the case is in its very early stages, the AFPD has limited information about the

case other than the charges and appears in order to provide legal advice at the arraignment such as,

for example, about the nature of the charges against him, the statutory penalty range, his constitutional rights, his initial plea, and detention issues.   The representation lasts only until counsel for the rest of the case is appointed, if the defendant requests such appointment.   In this case, the day of the arraignment the magistrate judge appointed the Federal Public Defender ("FPD") for the Southern District of Illinois to represent Atkins in the remainder of the case, and Kuenneke entered her appearance for Atkins on behalf of the FPD.   The following day, having reviewed the FPD's records and determined that a conflict of interest prevented the FPD from representing Atkins further in this case, Kuenneke moved to withdraw.   Several days later, the Court granted the motion to withdraw and appointed Howard to assume Atkins' representation.

    3. <u>The Guilty Plea</u>

   Howard appeared for Atkins, and in late August 2014 moved to continue the trial in part because of the voluminous discovery provided by the Government several days earlier, including 16 CDs of audio and video recordings, he needed to review and discuss with Atkins before deciding whether to negotiate a plea or prepare a trial defense.   On September 24, 2014, Howard appeared with Atkins when he changed his plea to guilty in an "open" plea, that is, without a written agreement with the Government.   The plea hearing substantially complied with Federal Rule of Criminal Procedure 11, *see United States v. Atkins*, 640 F. App'x 549, 552 (7th Cir. 2016).

   In that hearing, the Court informed Atkins that he could be imprisoned up to 20 years if he pled guilty to the charged offense.   Also at the hearing, Atkins stated under oath that he had discussed the charges with Howard and was fully satisfied with his counsel, representation and advice; that no threats or promises had been made to him in an effort to induce him to plead guilty (twice); that he was pleading guilty as his own free and voluntary act (twice); that he had talked

with Howard about the sentencing guidelines and how they might apply in his case; and that he would not be allowed to come back later on and change his mind about pleading guilty.   Atkins admitted that the factual basis asserted by the Government was correct and accurate:

> The Government would show that during the time frame alleged in the conspiracy, Mr. Atkins was involved with Co-Defendant Antuan Perkins, as well as others, in the distribution of crack cocaine and heroin in Williamson County, Illinois, primarily in the Colp area.   Mr. Atkins and others would transport the drugs from northern Illinois to Williamson County for redistribution.   Mr. Atkins would sometimes make the drug sales directly himself.   On other occasions Mr. Atkins' associates would deliver the drugs.   We would have witnesses who would testify that Mr. Atkins distributed crack cocaine and heroin from multiple residences in [the Village of] Colp, [Illinois,] including the residences of David Robinson and Donald Taylor, a/k/a Pumpkin.   Mr. Atkins would sometimes provide Robinson and Taylor with crack cocaine, heroin or cash in return for the use of their residences.   In addition, sometimes Mr. Atkins left drugs at Mr. Taylor's residence for Taylor to sell.   When Mr. Atkins was not available to sell the crack cocaine or heroin, he would allow one of his associates to use his cell phone in order to conduct the drug sales.   On multiple occasions Mr. Atkins sold crack cocaine or heroin to a confidential source working for law enforcement.   During one particular transaction on . . .   March 14, 2014, during a controlled purchase, the confidential source ordered crack and heroin from Co-Defendant Perkins.   Mr. Atkins and Perkins arrived together at the deal, the confidential source gave the money to Atkins, and Atkins obtained additional crack cocaine from Perkins before handing both the crack cocaine and heroin to the confidential source.   And, again, we would show these events occurred in Williamson County, which is within the southern district of Illinois.

Plea Tr. 8-10 (Case No. 14-cr-40061-JPG, Doc. 93).   The Court accepted Atkins' guilty plea, found that he had knowingly, voluntarily and competently entered into that plea, adjudged him guilty of conspiracy to distribute crack cocaine and heroin, and set a sentencing hearing.

4.      The Sentencing

Less than a month after Atkins pled guilty and before Atkins had spoken with a representative of the Probation Office in connection with preparation of his PSR, Howard notified the Court that Atkins no longer wanted Howard to represent him.   The Court held a hearing on the

matter on November 4, 2014. At that hearing, Atkins indicated he was dissatisfied with Howard's representation of him before his guilty plea. Atkins thought Howard should have explained the notion of relevant conduct better and should have showed him more discovery before he decided to plead guilty. The Court asked Atkins, "Are you wanting to withdraw your plea of guilty and go to trial?" and Atkins responded, "No, I don't, sir." Mot. Hrg. Tr. 12 (Case No. 14-cr-40061-JPG, Doc. 94). The Court allowed Howard to withdraw and appointed Holmes to replace him.

Holmes appeared for Atkins and continued to prepare for sentencing. On January 21, 2015, the Probation Office filed the initial PSR (Case No. 14-cr-40061-JPG, Doc. 47). The PSR revealed that law enforcement had been investigating Atkins' co-defendant Antuan Perkins since at least 2012 and that information obtained from Perkins at that time showed a connection with Atkins. The PSR further revealed that in November 2013, a confidential source ("CS") gave law enforcement information tying Atkins to drug distribution and reported he had purchased drugs from Atkins since 2007. The PSR also summarized statements given from December 2013 to May 2014 by other named individuals, including Adam Calvert, and three other CSs regarding Atkins' drug distribution organization and/or possession of firearms in connection with his drug activities. The PSR stated that in March 2014 Atkins called a CS looking to get a gun because two of his had been stolen. Several days later the CS told Atkins he could get three small guns, but Akins said he needed a bigger gun. After Atkins' arrest, a fourth CS reported he had purchased heroin from Atkins. The PSR described eight controlled buys from Atkins or his associates from December 2013 to March 2014 involving approximately 9.3 grams of crack cocaine and 1.1 grams of heroin.

The PSR concluded that Atkins' relevant conduct was 4,096.8 grams of marihuana

equivalent (comprising cocaine base, powder cocaine and heroin), that he possessed a dangerous

weapon, that he timely accepted responsibility for his criminal conduct, yielding a total offense

level of 31. The PSR further found Atkins had 9 criminal history points and was therefore in

category IV. His guideline sentencing range was 151 to 188 months in prison.

In early February 2015, Atkins wrote a letter to the Court complaining that he was not able

to have his discovery, that he had only reviewed it once on Holmes' laptop computer, and that he

had no access to a law library while he was housed at the White County Jail (Case No.

14-cr-40061-JPG, Doc. 49). The letter was stricken because Atkins filed it *pro se* while he was

represented by counsel.

On the same day the Court received Atkins' letter, Holmes filed objections to the PSR

(Case No. 14-cr-40061-JPG, Doc. 50). He claimed much of the relevant conduct finding was

based on unreliable, uncorroborated information and proposed vastly lower relevant conduct as

realistic amounts. He also denied certain allegations of possessing a firearm in connection with

his offense and complained that he could not take a position on some of his relevant conduct

because it was reported by unidentified CSs.

The record in this case establishes that around February 12, 2015,[4] the Government

identified three unnamed CSs to Holmes, who shared that information with Atkins by letter dated

the following day and asked for information from him about drugs he sold to them, if any (Doc. 1-1

at 2).

In response to correspondence from Atkins, the Court held a status hearing on February 19,

---

[4] The letter is actually dated 2014, but it is clear from the context that it should have been dated
2015. In February 2014, Atkins had not yet been arrested and Holmes had not yet begun to
represent him.

2015.   Atkins told the Court that before he pled guilty, he thought he was pleading guilty to "the evidence that was glued to the tape," that is presumably, only the drugs purchased in the controlled buys.   He complained that he had pled guilty under a misunderstanding about the significance of relevant conduct and pled guilty simply because Howard told him to.   He also complained that he had only been able to review the discovery one time, that he had not been able to research his case, and that much of the information in the PSR was false.   The Court asked Atkins, "Are you wanting to withdraw your plea of guilty and go to trial?" and Atkins responded, "No," that he was not ready for trial.   Status Hrg. Tr. 5 (Case No. 14-cr-40061-JPG, Doc. 108).   The Court then repeated the question, and Atkins responded, "Yeah, I want to withdraw my plea of guilty and I want to go over my things, man, and go to trial, how it's supposed to be, and then time for me to go to trial."   Status Hrg. Tr. 6 (Case No. 14-cr-40061-JPG, Doc. 108).   Because Atkins seemed particularly concerned with only having reviewed the discovery one time, the Court directed Holmes to review the discovery again with Atkins and to file a motion to withdraw Atkins' plea if he requested.

In March 2015, Holmes filed amended objections to the PSR (Case No. 14-cr-40061-JPG, Doc. 54) in which he continued to object to relevant conduct and the firearm enhancement on the same general grounds as the original objection and continued to propose relevant conduct amounts vastly lower than those in the PSR.   The following week, Holmes filed a motion for a downward variance based on Atkins' personal characteristics and background (Case No. 14-cr-40061-JPG, Doc. 57).   By letter dated March 27, 2015, Holmes advised Atkins that if the Court sustained his objections to the PSR, he would ask the Court to vary downward to a 48 or 60 month sentence, which he thought was reasonable (Doc. 1-1 at 5).

On April 23, 2015, the Court held another status conference in preparation for sentencing and to address a potential conflict of interest presented by Holmes' plans to begin working for a United States Attorney's Office in another district (Case No. 14-cr-40061-JPG, Doc. 95). At that hearing, Atkins waived the conflict and confirmed that he wanted to proceed with sentencing and did not want to withdraw his guilty plea:

> THE COURT: Okay. Mr. Atkins, do you wish to proceed with the sentencing?
>
> DEFENDANT ATKINS: Yes.
>
> THE COURT: You do. You do not wish to withdraw your plea?
>
> DEFENDANT ATKINS: No.
>
> THE COURT: Okay. This is after your discussions with your attorney, Mr. Holmes?
>
> DEFENDANT ATKINS: Yes.

Status Hrg. Tr. 8 (Case No. 14-cr-40061-JPG, Doc. 95).

On May 13, 2015, the Probation Office issued the First Revised PSR (Case No. 14-cr-40061-JPG, Doc. 66) in which Atkins' criminal history category was reduced from IV to III because the statute of offense for two prior convictions was found unconstitutional. The change resulted in a recommended guideline range of 135 to 168 months. The Probation Office's addendum to the First Revised PSR, also issued May 13, 2015, addressed Atkins' objections and indicated that the Government considered Atkins' objections inconsistent with acceptance of responsibility for his offense, placing a 3-point offense level reduction under U.S.S.G. § 3E1.1 at risk.

The Court held a lengthy sentencing hearing on May 18, 2015. At the beginning of the hearing, the Court made sure Atkins and Holmes had discussed the risk of losing the acceptance of

responsibility objection by persisting in relevant conduct objections. At the hearing, the Court heard testimony from Adam Calvert, Matt Davis, and Paul David Irby (all of whom testified they had purchased drugs from Atkins and had seen him with one or more guns) and found them credible as to their testimony. It also heard testimony from Chris Kelly (a law enforcement officer who testified he had interviewed other individuals who had purchased drugs from Atkins and/or had seen him with a gun) and Bernie Gard (a law enforcement officer involved in the controlled buys from Atkins). The Court overruled Atkins' objections, found Atkins' relevant conduct (consisting of cocaine base, powder cocaine and heroin) equated to 4,135.8 kilograms of marihuana equivalent, which established a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4). In settling on this amount, the Court reduced the drug amounts supported by the testimony by a month's worth to account for the probability that Atkins was likely out of town for at least some of the time covered by the testimony.

The Court also imposed a 2-point enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with his drug crime, overruling Atkins' objection to the enhancement. This conclusion was based in part on the multiple drug customers who saw Atkins with a gun or heard him say he had possessed a gun plus a recorded conversation in which Atkins sought to purchase a gun through Davis.

The Court further declined to award a 3-point offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) because it found Atkins had frivolously contested relevant conduct. Specifically, it accepted the Government's argument that Atkins was not simply arguing for lower relevant conduct by some reasonable amount to account for, for example, vacations or trips to obtain more drugs (which the Court ultimately did account for) but that he was

denying responsibility for the vast majority of the drug relevant conduct and denying his possession of a weapon in connection with his drug dealing despite numerous drug customers who stated otherwise.

With the gun enhancement and without the acceptance of responsibility reduction, the total offense level was 34.   Combined with Atkins' criminal history category of III, that yielded a guideline sentencing range of 188 to 235 months.   The Court denied Atkins' motion for a downward variance and sentenced him to serve 216 months in prison.

5.    The Appeal

Atkins appealed his sentence, where he was represented by AFPD Elizabeth R. Pollock of the Central District of Illinois.   On appeal, Pollock moved to withdraw on the ground that the appeal was frivolous, *see Anders v. California,* 386 U.S. 738 (1967), and Atkins responded to her motion arguing why the appeal was not frivolous.   The Court of Appeals agreed that Atkins could make no non-frivolous challenge to (1) whether his guilty plea was knowing and voluntary, (2) the imposition of the 2-level enhancement for possession of a firearm, (3) the denial of a 3-point reduction for acceptance of responsibility, or (4) the relevant conduct drug quantity finding.   It further directed Atkins to reserve his challenges to the effectiveness of his counsel for collateral review, and he has presented those challenges in this § 2255 motion.

B.    Ground 1:   Prosecutorial Misconduct

In looking at claims of prosecutorial misconduct, the Court must determine whether statements or conduct of the Government were improper and whether those statements or conduct deprived the petitioner of a fair proceeding.   *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994).   If the Government's misconduct is so serious that it poisons the entire proceeding, the

error violated the petitioner's due process rights. *Id.* The Court addresses each of Atkins'

assertions of prosecutorial misconduct in turn, then turns to the question of fairness.

1.     <u>Specific Instances of Governmental Misconduct</u>

a.     <u>Selective Prosecution</u>

Atkins claims the Government used his race—he is black—as a basis to arrest and charge

him in federal court with crack cocaine offenses and to make other decisions in prosecuting the

case. He asserts that nearly all of the individuals prosecuted for crack cocaine offenses in the

Southern District of Illinois are black and that some are only involved with trivial amounts of crack

cocaine while white people in the same position are not prosecuted. He argues it would make

more economic sense for the Government to devote its limited resources to stemming the influx of

powder cocaine to the district rather than pursuing low-level crack cocaine dealers dealing in only

"dust amounts," and infers that this pursuit of low-level crack cocaine dealers is motivated by race.

Finally, he asserts that the Government took pleasure in prosecuting him because he is black while

all of those he sold drugs to were white.

It is beyond dispute that, although the Government has broad discretion to pursue charges

wherever there is probable cause to believe an individual has committed a crime, the Government

cannot give different treatment to members of different races because of their race. *See United

States v. Armstrong*, 517 U.S. 456, 464 (1996). Such a decision would violate the equal

protection component of the Fifth Amendment Due Process Clause. *Id.* However, there is a

presumption that prosecutors have properly discharged their official duties without discrimination

unless there is " clear evidence to the contrary." *Id*. (internal quotations omitted). To prove a

selective prosecution claim, the defendant must "demonstrate that the federal prosecutorial policy

14

'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* at 465

(quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). "To establish a discriminatory effect

in a race case, the claimant must show that similarly situated individuals of a different race were

not prosecuted." *Armstrong*, 517 U.S. at 465. To establish discriminatory purpose, the

defendant must show the Government "selected or reaffirmed a particular course of action at least

in part because of, not merely in spite of, its adverse effects upon an identifiable group."

*McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (internal quotations omitted); *accord Wayte*, 470

U.S. at 610.

When a § 2255 petitioner makes a selective prosecution claim, in order to establish a *prima*

*facie* case, he must point to "sufficient evidence to raise a reasonable doubt that the government

acted properly in seeking the indictment." *United States v. Benson,* 941 F.2d 598, 611 (7th Cir.

1991); *accord United States v. Jarrett*, 705 F.2d 198, 204-05 (7th Cir. 1983). However, "[t]he

mere fact that one person is prosecuted for a crime while another is not does not support a claim of

selective prosecution." *Wilson v. United States*, 91 F.3d 147, 1996 WL 403012, at *2 (7th Cir.

1996) (Table). To obtain a § 2255 hearing, a petitioner must show he has "actual proof of the

conduct alleged." *Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002).

Atkins has not pointed to any proof of improper conduct by the Government based on race.

He does not contest that there was probable cause to arrest him, which gave the Government broad

discretion about whether to prosecute him. He offers only unsupported assertions that it

exercised this discretion because of his race. He does not point to any individual of a different

race that was similarly situated to him—that is, that conducted illegal activities in the Southern

District of Illinois of the type and magnitude he was conducting—that the Government was able,

15

but declined, to prosecute.   Nor does he point to any evidence that the Government made any particular prosecutorial decision in his case *because of* his race.   Atkins has simply not pointed to any actual proof of Government misconduct that would warrant a hearing or § 2255 relief.

b.    Location of Detention

Atkins believes the Government acted improperly when it purposefully housed him in the White County Jail because it had no law library.   He asserts this prevented him doing research for his case and from reviewing tapes pertaining to his case and forced him to rely on attorneys he now asserts were unsatisfactory.   He further suggests his lack of access to a law library resulted in his pleading guilty without adequate information.

Even if the prosecutor had been the moving force behind the decision to house Atkins at the White County Jail specifically because it had no law library, doing so does not amount to prosecutorial misconduct.   As the Court of Appeals noted in dismissing Atkins' direct appeal, "a defendant who is represented by counsel is not entitled to legal materials for independent research."   *United States v. Atkins*, 640 F. App'x 549, 552 (7th Cir. 2016) (citing *United States v. Sykes,* 614 F.3d 303, 311 (7th Cir.2010)).   Atkins was represented by counsel at all times during his prosecution, and, although he now has complaints about those counsel (which will be addressed later), he was not entitled to access to a law library during that representation.

Furthermore, access to a law library was not necessary in order to review the discovery in this case.   The record reflects that Howard was able to review at least some of the discovery materials with Atkins, and Holmes was able to review the complete set of materials with him twice.

In sum, the Government committed no misconduct relating to the facility in which to house

Atkins during his criminal proceedings.

c.     Deception Regarding Racial Profiling

Atkins claims the Government committed misconduct when the prosecutor met with Atkins and Kuenneke immediately prior to his arraignment on July 17, 2014, and allegedly tricked him into believing this was not a "racial profile case."   He believes that, as a consequence, he "defaulted" a racial profiling claim.

The Court presumes that this ground for § 2255 relief is similar to the selective prosecution claim discussed above and that the default of which he speaks is the requirement that he raise a selective prosecution claim before trial, *see* Fed. R. Crim. P. 12(b)(3)(A)(iv).   At the core of this argument is the assumption that this case was the product of racial profiling, but, as noted above, Atkins has pointed to no non-speculative, actual proof that his race had anything to do with this case.   Without such evidence, any Government representation that this prosecution was unrelated to Atkins' race cannot amount to misconduct and will not justify § 2255 relief.

d.     Acceptance of Responsibility Reduction

Atkins claims the Government vindictively asked the Court to deny Atkins the 3-point offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 recommended by the Probation Office in the First Revised PSR.   Atkins argues that under U.S.S.G. § 3E1.1, he could still object to relevant conduct outside the time of the conspiracy as charged in the indictment (from 2012 to May 2014) and that the Government vindictively sought to punish him for doing so.

The analysis of this asserted ground for § 2255 relief begins with the guidelines.   Under the guidelines, "[f]or purposes of calculating drug quantity, the offense level is determined by the

amount of drugs attributable to the defendant during his entire course of relevant conduct, 'not simply the amount associated with the particular offenses of conviction.'" *United States v. Austin*, 806 F.3d 425, 433 (7th Cir. 2015) (quoting *United States v. Redmond,* 667 F.3d 863, 875 (7th Cir.2012)).   Relevant conduct for drug conspiracies includes acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction."   U.S.S.G. § 1B1.3(a)(2).   This includes acts that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*," U.S.S.G. § 1B1.3 cmt. n.9(A) (defining "common scheme or plan"), and acts that "are part of a single episode, spree, or ongoing series of offenses," U.S.S.G. § 1B1.3 cmt. n.9(B) (defining "same course of conduct").   "[A] district court *must* increase a defendant's base offense level to account for relevant conduct, which includes drugs from any acts that were part of the same course of conduct or common scheme or plan as the convicted offense, regardless of whether the defendant was charged with or convicted of carrying out those acts."   *Austin*, 806 F.3d at 434 (emphasis in original; internal quotations omitted; affirming relevant conduct finding of over 100 grams of heroin where defendant found guilty of conspiring to distribute less than 100 grams).   This holds true even where the other drug activity occurs outside the dates of the charged criminal conspiracy.   *See United States v. Vaughn*, 722 F.3d 918, 932 (7th Cir. 2013).   Thus, an objection based solely on the fact that potential relevant conduct occurred outside the period of the charged conspiracy is likely to be frivolous.

A defendant who frivolously contests relevant conduct risks denial of an offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.   One of the appropriate consideration in deciding whether to award the reduction is the defendant's:

truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or *not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).* Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction [for acceptance of responsibility]. A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. *However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. . . .*

U.S.S.G. § 3E1.1, cmt. n.1(A) (emphasis added).

While it is true that due process prohibits the Government from punishing a person because he has exercised a protected statutory or constitutional right, *United States v. Goodwin*, 457 U.S. 368, 372 (1982), that is not at all what happened with respect to the potential acceptance of responsibility reduction. Here, the Government was not punishing Atkins for reasonably contesting relevant conduct but making a reasonable, good faith argument that Atkins' objections to relevant conduct were frivolous. Atkins has pointed to no evidence of any improper motive for the Government's request and, indeed, the record shows there was a reasonable basis for it. *See, e.g., United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015) (vindictive prosecution claim requires objective evidence of vindictiveness or inherent risk of vindictiveness).

As noted above, and contrary to Atkins' belief, relevant conduct can include conduct outside the dates of the offense charged in the indictment and, indeed, U.S.S.G. § 1B1.3(a)(2) requires it if it is part of the same course of conduct or common scheme or plan as the offense of conviction. At the time the Government asked the Court to reject the 3-point reduction, there was evidence in the record that Atkins sold drugs extensively both in and out of the charged conspiracy period in the same course of conduct (sufficiently connected to the charged conspiracy to constitute an ongoing series of offenses) and/or as part of a common scheme or plan (using

common accomplices, for common purpose, and using a similar *modus operandi*).   That evidence supported relevant conduct of substantial amounts of crack cocaine (709 grams), powder cocaine (1,104 grams) and heroin (1,489.6 grams),[5] yet Atkins proposed, without presenting a shred of evidence, that his relevant conduct be limited to a tiny fraction of that amount:   28.3 grams of crack cocaine and 6.6 grams of heroin.   Am. Obj. 4 (Case No. 14-cr-40061-JPG, Doc. 54).   In addition, a number of Atkins drug customers testified that Atkins possessed at least one gun during his drug dealing activities, but Atkins maintained the he did not possess a gun or, in the alternative, that if he possessed a gun, it was not connected in any way with his drug dealing.   It was also clear that the Government had put Atkins on notice that it viewed his standing by his objections as refusing to accept responsibility.

No evidence suggests that the Government's request to deny the offense level reduction for acceptance of responsibility was vindictive or that by making such a request it sought to punish Atkins for exercising a constitutional or statutory right.   Instead, it was a reasonable, meritorious argument based on the standards set forth in the sentencing guidelines that the Court, in its independent judgment, accepted.   There was no government misconduct in this regard.

e.      Notice Under Federal Rule of Evidence 404(b)

Atkins claims the Government committed misconduct when it failed to provide proper advance notice under Federal Rule of Evidence 404(b) that it was going to rely on his drug activities long before the investigation of this case began in December 2013 to prove Atkins' relevant conduct.

---

[5] The Court ended up adopting slightly lower amounts (701.2 grams of crack cocaine, 1,009 grams of powder cocaine, and 1,431 grams of heroin) to account for a reasonable objection—that Atkins could not have sold drugs in Southern Illinois "every day," as Calvert testified, when other evidence suggested he went on occasion to Chicago to buy drugs and visit his family.

Rule 404(b) states:

**(b) Crimes, Wrongs, or Other Acts.**

    **(1) Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

    **(2) Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

        **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

        **(B)** do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

Atkins' argument stems from his fundamental misunderstanding of Rule 404(b) and its applicability to sentencing proceedings.  As a preliminary matter, the Federal Rules of Evidence, including Rule 404(b), do not apply at sentencing hearings.  *United States v. Sunmola*, 887 F.3d 830, 839 (7th Cir. 2018).  At sentencings, the Court may rely on "any information presented . . . so long as this information 'has sufficient indicia of reliability to support its probable accuracy,'" *id.* (quoting *United States v. Vivit*, 214 F.3d 908, 916 (7th Cir. 2000)), regardless of whether the evidence would be admissible under the Federal Rules of Evidence.  Indeed, the rule, by its very terms, only requires the Government to give notice of other crimes, wrongs, or acts it intends "to offer at trial."  Fed. R. Evid. 404(b)(2)(A).

Because Rule 404(b) does not apply at sentencing and there was no trial in this case, there was no obligation for the Government to comply with that rule.[6]  Therefore, Atkins is not entitled

---

[6] Atkins mentions in passing that he was surprised by the evidence presented at the sentencing hearing because the Government failed to give notice under Rule 404(b).  The Court is hard-pressed to see how Atkins could have been surprised by the Government's presentation of evidence that was described fully in the original PSR and the First Revised PSR, was presumably available through the Government's standard "open file" policy, and was likely contained in the discovery Atkins reviewed twice with Holmes before sentencing.  In addition, the Government

to § 2255 relief for failure to provide notice under Rule 404(b).

f.    Disclosure of Calvert as a Witness

Atkins claims the Government committed misconduct when it failed to disclose Adam Calvert as a witness it planned to call at sentencing.   He claims this failure was a violation of Federal Rules of Criminal Procedure 26.2 and 32(i)(2) because those rules obligated the Government to disclose Calvert on February 12, 2015, when it identified three of the CSs referenced in the PSR.

Again, Atkins' argument relies on a fundamental misunderstanding of the rules.   The pertinent parts of Rule 26.2 essentially provide that, on motion of the defendant, the Court must order the Government to produce to the defendant any relevant, non-privileged statement of a testifying witness after that witness has testified.   Rule 32(i)(2) provides that those parts of Rule 26.2 apply when a witness is called to testify at a sentencing hearing, and if the Government fails to comply, the Court may not consider the witness' testimony.   These rules do not require the Government to identify a witness prior to a sentencing hearing, so the Government did not violate either of those rules by not informing Holmes in February 2015 it planned to call Calvert to testify at sentencing.[7]

Atkins has not pointed to any other rule or Court order requiring the Government to

_____

disclosed the identities of the confidential sources cited in the PSR a full three months before the sentencing hearing.   This provided far more notice to Atkins of the evidence to be used against him than any "notice of the general nature of any such evidence" under Rule 404(b) would have provided.

[7] The Court notes that the Government's disclosure reflected in Holmes February 13, 2015, letter to Atkins is of the identities of three confidential sources whose information was contained in the PSR, not a disclosure of the witnesses the Government intended to call at sentencing, as Atkins apparently believes.   Calvert was not identified by the Government at that time because the PSR had already clearly identified him as a source of substantial relevant conduct information.

disclose the identity of witnesses it intends to call at a sentencing hearing prior to that hearing.

*See United States v. Edwards*, 47 F.3d 841, 843 (7th Cir. 1995) (noting neither the Constitution nor Federal Rule of Criminal Procedure 16 require pretrial disclosure of Government witnesses, although a court has inherent authority to order such disclosures in the interest of the orderly administration of justice).   Moreover, Atkins' complaints of surprise ring hollow where Calvert was disclosed as early as January 2015 in the original PSR as providing substantial relevant conduct information and where Atkins specifically objected to Calvert's information.   It could not have been a surprise therefore that the Government called Calvert to testify to the information he provided in the PSR.

g.      <u>Conspiracy Charge and Relevant Conduct</u>

Atkins' argument in this section is difficult to understand, but it appears he believes the Government committed misconduct by charging him with a conspiracy beginning in 2012 where it did not begin investigating him and gathering evidence against him until December 2013 and where it had conducted only five controlled buys from him.   He further believes the Government behaved improperly by asking the Court to count as relevant conduct Atkins' drug dealing activities stretching back to 2007.   He suggests the Government knowingly introduced false testimony regarding the weight of drugs Atkins sold.   He points to inconsistencies or improbabilities within the testimonies of Calvert, Davis and Irby to show they were not true and argues that the information reported from other drug buyers by Kelly and Gard was unreliable. The Court addresses the main threads of this tangle of arguments in turn, noting that many of the topics have been addressed elsewhere in this order as well.

Atkins' first theory confuses an investigation with a conspiracy.   There is nothing wrong

with the Government's beginning an investigation, learning through the investigation that a suspect had conspired to distribute drugs before the investigation began, and bringing charges asserting that earlier conspiracy. Assuming that is what happened in Atkins' case, there was no misconduct committed when, beginning in December 2013, the Government learned Atkins had been conspiring to distribute crack cocaine and heroin since 2012, and then brought charges alleging a conspiracy beginning in 2012.

As for Atkins' objection to relevant conduct that occurred before the conspiracy began, the Court has already explained that relevant conduct need not be associated with the offense of conviction so long as it is was "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see United States v. Austin*, 806 F.3d 425, 433 (7th Cir. 2015). For this reason, the Government committed no misconduct by introducing evidence that was arguably part of the same course of conduct or common scheme or plan as Atkins' conspiracy to distribute crack cocaine and heroin.

As for Atkins' suggestion that the Government knowingly introduced false testimony regarding the weight of drugs Atkins sold, he has pointed to no evidence to support this allegation. It is true that a prosecutor's knowing use of false testimony violates the due process clause. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009); *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001). In the context of a trial, "[w]hen the defendant argues that the government allegedly used perjured testimony, to warrant setting the verdict aside and ordering a new trial, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of

the jury. . . .   'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'"   *Shasteen*, 252 F.3d at 933 (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)); *see also Weaver v. Nicholson*, No. 16-2400, 2018 WL 2995758, at *5 (7th Cir. June 15, 2018).   The test is similar for the Government's use of witnesses at other stages of a criminal prosecution, including sentencing hearings.

In this case, however, Atkins has alleged nothing more than mere inconsistencies or improbabilities in testimony by witnesses at the sentencing proceeding.   He has not alleged any facts showing that any witness's testimony was perjurious simply because it conflicted with other testimony or was unlikely to be true, and has certainly not offered any support for his accusation that the Government called any witness knowing he would testify falsely.   In fact, the Court heard the conflicting or improbable testimony and the able cross-examination by Holmes, and it resolved uncertainties by determining that the witnesses were essentially credible but making an allowance for the improbability that Atkins sold drugs every single day of a multi-year period by slightly reducing the relevant conduct.

As for Atkins' assertion that the Government committed misconduct by calling Kelly and Gard to testify about allegedly unreliable information from other drug buyers, Atkins has pointed to no evidence, only his own self-serving speculation, showing that such information lacked "sufficient indicia of reliability to support its probable accuracy," which was his burden at sentencing.   *United States v. Sunmola*, 887 F.3d 830, 839 (7th Cir. 2018) (noting that a defendant cannot attack information in the PSR by making bare denials of its accuracy).   More importantly, Atkins has not pointed to any evidence that the Government was aware that the information was unreliable such that presenting the information could have constituted misconduct.   Because

Atkins has simply alleged nothing amounting to prosecutorial misconduct regarding presentation of the witnesses at sentencing, the Court rejects this basis for § 2255 relief.

To the extent Atkins attempts to articulate other grounds for § 2255 relief in this section of his motion, they are undecipherable and therefore will not be addressed.

h.     <u>Presentation of False Testimony</u>

Atkins again argues that the Government presented the false testimony of Kelly and Gard regarding the investigation and adds the allegation that it also presented false testimony to the grand jury to obtain the indictment.   Atkins' motion is full of his own opinions about how the investigation was "lazy" and what information it actually produced but again, he does not point to any evidence the Government knew Kelly's or Gard's testimony was false or unreliable, a necessary element to show Government misconduct for presenting false testimony.

The closest Atkins comes is noting that Gard testified that the weight of the drugs obtained in three of the controlled buys (3.2 grams, 5.1 grams and 5.4 grams of crack cocaine) was more than the weight estimates contained in the First Amended PSR for those buys (1.6 grams, 2.4 grams and 2.4 grams of crack cocaine).   Such a discrepancy would have been obvious to the Government.   However, like any inconsistency in evidence, the inconsistency itself does not mean the testimony was false or the Government knowingly put on false evidence.   Here, there is a reasonable explanation for the discrepancy:   the amounts listed in the First Amended PSR were estimates not confirmed by laboratory analysis, and the amounts presented at trial were confirmed by a laboratory as evidenced by a lab report for each amount.   In these circumstances, the discrepancy does not support the knowing presentation of false evidence.

i.    Proof of Firearm Possession

Atkins argues that the Government committed misconduct when it failed to prove beyond a reasonable doubt that he possessed a firearm in the course of the conspiracy and instead proffered clearly improbable and unreliable testimony.    Specifically, he argues that it was improbable he would possess a gun in Southern Illinois when he was not in possession of a gun when he was arrested in the Chicago area, a far more dangerous place.

As a preliminary and fundamental matter, the Government was not required to prove Atkins possessed a firearm beyond a reasonable doubt.    Instead, because the possession of the firearm was used for the purposes of a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1), the standard of proof was a preponderance of the evidence, not beyond a reasonable doubt.    *United States v. Morris*, 836 F.3d 868, 872 (7th Cir. 2016); *United States v. Orozco*, 576 F.3d 745, 751 (7th Cir. 2009).    The Government proved to the Court's satisfaction at the sentencing hearing through numerous witnesses that Atkins actually possessed a firearm, and Atkins, despite Holmes competent argument, failed to convince the Court it was clearly improbable that the possession was connected with his drug offense.    *See Morris*, 836 F.3d at 872 (explaining burdens of dangerous weapon enhancement); U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A).    Regardless, and more important to Atkins' § 2255 motion, the standard of proof is established by law; the Government is not responsible for establishing that standard and would not be guilty of misconduct for simply failing to satisfy it in any case.    To suggest otherwise is absurd.

As for Atkins suggestions that the Government knowingly proffered improbable and unreliable testimony, as discussed above in connection with relevant conduct drug amounts, Atkins has not pointed to any actual facts showing the Government knowingly presented any

improper testimony.   He offers only speculation, and that is not enough to entitle him to § 2255 relief.

j.    <u>Deficient Indictment</u>

Atkins' final claim of prosecutorial misconduct relates to the Indictment, which he claims failed to allege detailed facts and circumstances of the charged conspiracy, any overt act done in furtherance of the conspiracy, or the time frame of the conspiracy.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1).   To satisfy constitutional standards, it must (1) contain the elements of the offense, (2) fairly inform the defendant of the charges against which he must defend, and (3) enable him to plead an acquittal or conviction in bar of further prosecution for the same offense. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (citing *Hamling v. United States,* 418 U.S. 87, 117 (1974)).

The Seventh Circuit Court of Appeals has consistently held that an indictment charging conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a) and 846 is adequate "if it sets forth the existence of a drug conspiracy, the operative time of the conspiracy, and the statute violated."    *United States v. Singleton*, 588 F.3d 497, 499-500, (7th Cir. 2009) (citing *United States v. Cox,* 536 F.3d 723, 727-28 (7th Cir. 2008)).   Atkins' indictment does all of those things.   It alleges the existence of the conspiracy with Perkins and others, and, contrary to Atkins' assertions, it alleges the dates of the conspiracy:   2012 to May 2014.   It need not allege any overt act because an overt act is not an element of a drug conspiracy.   *See United States v. Shabani,* 513 U.S. 10, 15 (1994) ("In order to establish a violation of 21 U.S.C. § 846, the

28

Government need not prove the commission of any overt acts in furtherance of the conspiracy."). Atkins' indictment was simply not deficient.

Even had the indictment lacked sufficient detail, that would have amounted only to legal deficiency that Atkins should have challenged at the trial court level, not prosecutorial misconduct warranting relief under § 2255.

2.      Fairness of Proceedings

In order to justify § 2255 relief based on prosecutorial misconduct, Atkins must also show that the misconduct deprived him of a fair proceeding. *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994). Although the Court has found no Government misconduct, even if there were an arguable basis for believing any of the foregoing Government conduct was not proper, Atkins has not shown it was so egregious as to deprive him of a fair proceeding. He pled guilty, declined to seek to withdraw his guilty plea, and continues to admit he was guilty even in his § 2255 motion (although he disagrees with his relevant conduct). The Court sentenced him based on multiple witnesses' testimony regarding his substantial drug activities that brought him well beyond the threshold for a base offense level of 32 and regarding his possession of a firearm.

For these reasons, Atkins is not entitled to § 2255 relief based on prosecutorial misconduct.

C.      Ground 2:   Ineffective Assistance of Counsel

Atkins' second group of arguments asserts he was deprived of the right to effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397

U.S. 759, 771, n.14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* Counsel's performance should be judged as a whole and need not be perfect so long as it was competent. *Groves*, 755 F.3d at 593. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Groves*, 755 F.3d at 591. Counsel's performance must be evaluated keeping in mind that an attorney's strategies are a matter of professional judgment and often turn on facts not contained in the record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d at 591.   The plaintiff need not show that counsel's deficient performance "more likely than not altered the outcome," but that the likelihood of a different result was "substantial, not just conceivable."   *Harrington*, 562 U.S. at 111-12.

The Court addresses each of Atkins' alleged instance of ineffectiveness in turn.

a.   Kuenneke

Atkins faults Kuenneke, the attorney who represented him at his arraignment, for misleading him in her short meeting before the arraignment into believing this was a "controlled buy case" rather than a "racial profiling case," and then withdrawing as his counsel.

Atkins has not pointed to any evidence of Kuenneke's deficient performance.   As noted above with respect to his prosecutorial misconduct claim of selective prosecution, Atkins has not pointed to anything other than his own speculation from which reasonably competent counsel should have concluded that racial profiling was a legitimate defense in this case.   It was well within the range of professionally competent assistance for Kuenneke to advise her client before the arraignment about the actual charges against him—drug charges supported by controlled buys—rather than advise him to pursue a defense for which there was no arguable basis evident at the time.   Had evidence arisen to suggest a basis for believing race was a motivating factor in Atkins' prosecution, there was plenty of opportunity to raise that defense later in the case.

As for Kuenneke's withdrawal as counsel, she sought to withdraw because of an actual conflict of interest.   Kuenneke performed as competent counsel should—and indeed, must—in the face of an actual conflict.

In addition, Atkins has not pointed to any facts establishing prejudice from Kuenneke's

conduct.   To the extent a racial profiling defense might have existed, Atkins' subsequent counsel could have investigated the question and asserted it as a defense if there was reason to believe it was a valid argument.   However, as noted above Atkins has pointed to no evidence suggesting it was a valid defense, so the failure to raise it at the arraignment caused no prejudice.   To the extent Atkins objects to Kuenneke's withdrawal from the case, she was replaced by other counsel, so Atkins suffered no prejudice.

         c.     <u>Holmes</u>

Atkins claims Holmes, who represented him after his guilty plea through entry of final judgment, was deficient in a number of ways.

         i.     <u>Failure to Review File</u>

Atkins claims that after Holmes was appointed to represent him in November 2014, he failed to review the case file to discover prosecutorial misconduct and Kuenneke's ineffective assistance of counsel related to a racial profiling, or selective prosecution, claim.   He further faults Holmes for failing to raise such a claim on Atkins behalf.

Atkins has not pointed to any prejudice he suffered as a result of Holmes' alleged failure to adequately review the case file reflecting the events before he was appointed to represent Atkins. Had he adequately reviewed the file, he would not have discovered any prosecutorial misconduct or ineffectiveness by Kuenneke because, as discussed above, there was no evidence of those things.   Furthermore, as noted earlier, Atkins has pointed to no evidence of racial profiling or selective prosecution that should have led competent counsel to raise that argument as a defense. "An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct."   *United States v. Hodges*, 259 F.3d 655,

660 (7th Cir. 2001).   Holmes' performance in this respect was not deficient and did not prejudice Atkins.

### iv.     Failure to Seek Dismissal of Indictment

Atkins argues that Holmes should have objected to prosecutorial misconduct regarding the return of a deficient indictment and should have filed a motion to dismiss the indictment because of those deficiencies.

As discussed above, the indictment in this case was not deficient and the Government did not commit misconduct by obtaining it.   Thus, the arguments Atkins claims Holmes should have raised were meritless, and an attorney is not deficient in his performance for failing to raise a losing argument.   *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005).   Moreover, Atkins suffered no prejudice because the Court would have rejected such an argument had Holmes made it.

### vi.     Failure to Object to Withholding Acceptance Reduction

Atkins faults Holmes for failing to object to the Government's misconduct for asking the Court not to reduce Atkins' offense level by 3 points under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility.

The Court is puzzled by Atkins' assertion that Holmes did not object to the Government's request not to grant the reduction.   The sentencing transcript reveals that Holmes *did* argue in favor of the reduction, although he was unsuccessful.   Atkins has not pointed to anything else Holmes should have or could have argued that would have had a reasonable probability of causing the Court to award the reduction.

To the extent Atkins claims Holmes should have asserted that the Government was

committing misconduct in arguing against the reduction, the Court has already explained why the Government had a reasonable basis for arguing that Atkins was frivolously objecting to relevant conduct and why the Government's argument was therefore not improper. Had Holmes asserted prosecutorial misconduct, the Court would have flatly rejected that assertion.

For these reasons, Atkins has not carried his burden of pointing to evidence that Holmes was deficient in connection with the denial of the 3-point reduction for acceptance of responsibility or that Atkins suffered prejudice from Holmes' performance.

### vii. Failure to Object to Lack of Rule 404(b) Notice

Atkins claims Holmes was constitutionally ineffective for failing to object to Government's lack of notice of the "crimes, wrongs, or other acts" it intended to use at sentencing under Federal Rule of Evidence 404(b). As noted earlier in this order, the Federal Rules of Evidence do not apply to sentencing proceedings, so an objection that conduct in connection with a sentencing hearing did not comply with one of those rules would have been frivolous. Holmes was not deficient for failing to make this frivolous objection, and Atkins suffered no prejudice from that failure.

### viii. Failure to Object to Non-disclosure of Calvert

Atkins faults Holmes for not objecting to the Government's failure to disclose that it would call Adam Calvert as a witness at the sentencing hearing. Again, the Court has already explained why the Government was not required to disclose the witnesses it intended to use at sentencing and why Atkins should not have been surprised when he was called to the stand. Holmes was not deficient for failing to make this frivolous objection, and Atkins suffered no prejudice from that failure.

ix.    Failure to Object to Relevant Conduct Evidence

Atkins believes Holmes should have objected to the introduction of evidence of Atkins' drug dealing outside the dates of the charged conspiracy, that is, from 2012 to May 2014, or outside the dates of the investigation, that is, from December 2013 to May 2014.   The Court has already explained why the Government did not behave improperly in introducing information regarding Atkins' drug dealing long before the investigation or the conspiracy alleged in the indictment.   Indeed, there was a reasonable basis for the Government to believe such activity formed part of Atkins' relevant conduct because it was part of the same course of conduct or common scheme or plan as his offense, and the Court agreed that it was.   Had Holmes made an objection to inclusion of such drug activity simply because it preceded the investigation or the charged conspiracy dates, the Court would have rejected the objection as meritless.   By failing to object on a frivolous basis, Holmes performance was not deficient.

This argument may also be construed to assert that Holmes was constitutionally ineffective for failing to argue that the relevant conduct evidence introduced by the Government was not "part of the same course of conduct or common scheme or plan as the offense of conviction."   U.S.S.G. § 1B1.3(a)(2).   It clearly was in that it involved many of (1) the same compatriots to sell (2) the same kinds of drugs Atkins obtained from (3) the same sources in Chicago out of (4) the same general location in Colp, Illinois, to some of (5) the same customers up to and including the time of the charged conspiracy.   Atkins has not suggested what evidence Holmes could have presented or what argument he could have made to convince the Court that Atkins' conduct outside the conspiracy dates was not appropriately considered as relevant conduct.   When a § 2255 petitioner faults his attorney for failing to present evidence, he bears the burden of demonstrating what

evidence the attorney should have presented and that the presentation of such evidence would have had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *see, e.g., United States v. Stuart*, 773 F.3d 849, 852-53 (7th Cir. 2014). Atkins has not pointed to any actual facts showing Atkins' prior drug activity did not qualify as relevant conduct. Thus, he cannot show Holmes was deficient for failing to convince the Court it did not or that he suffered prejudice from that performance.

x.      Failure to Object to Presentation of False Drug Testimony

Atkins asserts that Holmes was deficient for failing to object to the Government's knowing use of false testimony. However, as explained above, there was no evidence to support that the Government knew it was calling witnesses who would testify falsely. True, the testimony was not always consistent and contained some improbabilities, but that is not enough to infer the knowing use of false testimony. Holmes was not deficient for failing to make an argument that was unsupported by any evidence.

As for the alleged false or unreliable testimony itself, Holmes adequately cross-examined the Government's witnesses in an attempt to discredit them. Specifically, he highlighted the witnesses' reasons to be biased; the unreliability of their memory in light of their drug use; their dishonesty as evidenced by their stealing drugs from their customers; the implausibility, impossibility, inconsistency or illogic of the facts they testified about; their lack of personal knowledge of certain facts; and/or the lack of corroborating evidence. Nevertheless, the Court found the witnesses essentially credible and reliable. To the extent Atkins believes Holmes should have used further "adversarial testing" to reveal the falsity or unreliability of witnesses'

36

testimony, he has not carried his burden of demonstrating what further "adversarial testing" Holmes should have done that would have had a reasonable probability of causing the Court to disbelieve the witnesses or find their testimony unreliable.   *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *see, e.g., United States v. Stuart*, 773 F.3d 849, 852-53 (7th Cir. 2014).

One inconsistency in the evidence bears mention.   Atkins suggests Holmes could have confronted Gard with the discrepancy between the estimated drug amounts of the controlled buys listed in the PSR and the higher drug amounts listed in the laboratory reports that were admitted at sentencing.   However, as explained above, the lab reports were likely to be more accurate than the estimated amounts reflected in the PSR, so highlighting the discrepancy would not have had a reasonable probability of causing the Court to reject the amounts determined by the laboratory analyses.

Finally, in his § 2255 motion, Atkins proposes numerous alternative calculations for his relevant conduct.   However, the Court made its relevant conduct finding based on the evidence at the hearing, and Atkins has not proposed any alternative calculation in his § 2255 motion that, had Holmes suggested it at sentencing, would have had a reasonable probability of changing the Court's finding.

In sum, Atkins has failed to show Holmes' deficient performance or prejudice regarding the evidence presented at sentencing.

xi.   <u>Failure to Object to Possession of Firearm</u>

Atkins believes Holmes should have been able to discredit the witnesses who testified that Atkins possessed a firearm during the charged conspiracy and erred in making an argument that

assumed Atkins possessed a firearm.

Atkins argues that the information from numerous sources that he possessed a firearm was unreliable and improbable. In fact, at the sentencing hearing, Holmes announced that it was Atkins' position that he did not possess a gun, but he acknowledged that a number of his drug customers said he did, and he was recorded seeking to buy a gun after a witness gave information that one of his guns had been stolen from him. Atkins now suggests that some witness statements were unreliable because they were not made in court under oath, but the Court routinely relies on that kind of information in sentencing hearings. He also argues the information was implausible because it was unlikely that Atkins had a gun in Southern Illinois when he did not have one when he was arrested in the Chicago area, which he argues is a far more dangerous place. These arguments are not persuasive and, in light of the strong evidence that he possessed a gun, would not have had a reasonable chance of convincing the Court otherwise. Atkins does not point to any other information or argument Holmes could have used to discredit the information supporting his gun possession that would have had a reasonable probability of convincing the Court Atkins did not possess a firearm. Thus, he has not shown Holmes was deficient or that he suffered prejudice from Holmes' performance.

On the contrary, in light of the strong evidence Atkins possessed a gun and the recorded conversation of Atkins seeking to buy a gun, Holmes pursued the reasonable strategy of arguing that, even if Atkins had possessed a gun, there was no reliable evidence that any gun he possessed was connected with his drug conspiracy. Consequently, it could not serve as a basis for the 2-point enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). Holmes cross-examined the witnesses consistent with this theory and argued it competently to the

Court, but the Court ultimately rejected it and imposed the enhancement. Again, Atkins has not articulated what he believes Holmes could have said or done to convince the Court otherwise. Holmes performance was well within the range of reasonably competent counsel and did not amount to ineffective assistance.

xii.     <u>Failure to Act in Good Faith</u>

In this final objection to Holmes' performance as counsel, Atkins claims Holmes failed to act in good faith in a handful of ways including by limiting his representation to the sentencing phase of the proceedings, by failing to timely seek withdrawal of Atkins' plea, by misleading him as to his potential sentence, by failing to challenge the reliability of witnesses to Atkins' relevant conduct, and by failing to seek an offense level reduction under U.S.S.G. Amendments 715 and 782.

The Court addresses the contention that Holmes was ineffective for failing to demand that Atkins receive the benefit of two sentencing guideline amendments. The first, Amendment 715, became effective May 1, 2008, and addressed how to calculate a base offense level where the relevant conduct consisted of different types of drugs. Amendment 715 provided, in part, that once the drug conversion tables were used to calculate the marihuana equivalent of the various drugs, the offense level should be reduced by 2 points if one of the relevant conduct drugs was crack cocaine. Amendment 715 was designed to remedy an anomaly where Amendment 706, which reduced the base offense level for some crack cocaine offenses, did not provide the intended reduction. *See* U.S.S.G. Am. 715 Reason for Amendment.

Atkins believes Holmes was deficient because he failed to ask for the 2-level reduction called for in Amendment 715. He was not. Amendment 715 was stricken by Amendment 748,

which replaced the base offense level calculation process for multiple drugs as of November 1, 2010. Atkins was not entitled to any reduction under Amendment 715 because it was no longer effective as of his sentencing date, so Holmes was not deficient for failing to request one.

The second guideline amendment Atkins cites is Amendment 782, which became effective November 1, 2014. The Sentencing Commission promulgated Amendment 782 to lower base offense levels associated with various drug amounts. Atkins believes Holmes was deficient for failing to ask for the reduction at sentencing. Again, he was not. Atkins' May 18, 2015, sentence was calculated using the 2014 version of the guidelines, which already incorporated Amendment 782. Thus, his sentence already reflects the changes implemented by Amendment 782, and Holmes was not deficient for failing to ask for a benefit Atkins was already receiving.

Atkins also believes Holmes should have objected that the offense level calculation was wrong. It is true that "an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance entitling the defendant to relief." *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011) (citing *Glover v. United States*, 531 U.S. 198 (2001)). However, Atkins' real gripe appears to be with the Court's relevant conduct and adjustment findings, not the calculation of his sentencing range once the Court made those findings. Given the Court's relevant conduct and adjustment findings, the sentencing calculation made by the Court based on those findings was not in error, and Holmes was not deficient for failing to object to it.

The other arguments contained in Atkins' final allegation of Holmes' ineffectiveness are adequately covered by his other more specifically articulated grounds, so the Court will not consider those arguments as separate potential grounds for § 2255 relief.

d.     Pollock

Atkins faults Pollock, the attorney who represented him on appeal, for failing to raise certain argument on appeal, namely, the overinclusiveness of the Court's relevant conduct finding, the erroneous application of the 2-point offense level enhancement for possessing a firearm, the denial of a 3-point reduction for acceptance of responsibility, and the failure to allow Atkins to withdraw his guilty plea.

Generally, appellate counsel is only deficient for failing to argue an issue on appeal if she "fails to appeal an issue that is both obvious and clearly stronger than one that was raised." *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001); *accord Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015); *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008).   Furthermore, a petitioner can show prejudice from this deficiency only by demonstrating "that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different."   *Suggs*, 513 F.3d at 678.

In this case, Pollock filed an *Anders* brief on appeal because she could identify no non-frivolous arguments to make.   The Supreme Court in *Anders v. California*, 386 U.S. 738, 741-42 (1967), stated:

> If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account.   If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied.

(internal quotations omitted).

Pollock raised in her *Anders* brief the arguments that Atkins plea was not knowing and voluntary and that the firearm and acceptance of responsibility adjustment findings were wrong.

Atkins raised in his response to Pollock's brief that the witnesses at his sentencing were not truthful and that his relevant conduct was wrong. The Court of Appeals found all of these arguments frivolous. *See United States v. Atkins*, 640 F. App'x 549, 552-53 (7th Cir. 2016). Consequently, since they were frivolous, Atkins cannot show prejudice from Pollock's failure to advance them as substantive arguments on appeal. Furthermore, since the Court of Appeals accepted Pollock's *Anders* brief and dismissed Atkins' appeal, it implicitly agreed with Pollock that there were no other non-frivolous arguments that could be made on direct appeal, much less any that were stronger than the ones already rejected as frivolous. *See id.* In such circumstances, Atkins cannot show he was prejudiced because Pollock failed to raise any other issues.

As for Atkins' argument that Pollock should have appealed the failure of the Court to allow Atkins to withdraw his guilty plea—which was not addressed squarely by the Court of Appeals—the record did not support such an argument since Atkins did not move to withdraw his plea and confirmed to the Court before sentencing that he did not wish to do so. To the extent that decision may have been the result of ineffective assistance of counsel, that will be explored in the Court's consideration of the pending § 2255 motion. But in any case, Pollock was not constitutionally ineffective for failing to raise an argument that is not supported by the record.

C.     Ground 3:   Overinclusiveness of Relevant Conduct

In this ground for relief, Atkins claims that the Court erred in including uncharged and unrelated conduct outside the time frame of the charged conspiracy in calculating relevant conduct drug amounts and did not make the findings necessary to support its conclusion.

The Court need not consider this argument because it was rejected as frivolous in Atkins' direct appeal, and a § 2255 motion is not a second chance at a successful appeal. *Varela v. United*

*States*, 481 F.3d 932, 935 (7th Cir. 2007). Applying the "law of the case" doctrine, the Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law. *Id.*; *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

The Court of Appeals has already rejected Atkins' relevant conduct arguments as frivolous, *see United States v. Atkins*, 640 F. App'x 549, 552-53 (7th Cir. 2016), and Atkins has pointed to no relevant changed circumstances of fact or law since that decision. Accordingly, under the law of the case doctrine, the Court declines to revisit this issue. Even if it were to consider it, it would reject it for the reasons set forth earlier in this order regarding the proper scope of relevant conduct and the reliability of the evidence supporting the Court's findings.

To the extent any aspect of Atkins' argument was not addressed in his relevant conduct argument before the Court of Appeals, he has procedurally defaulted on those claims. A petitioner cannot raise in a § 2255 motion nonconstitutional issues that he failed to raise on direct appeal regardless of cause and prejudice. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000). This includes errors in relevant conduct findings and the subsequent calculation of an advisory sentencing guideline range based on those finding.

## IV.    Conclusion

For the foregoing reasons, the Court **REJECTS** as a basis for § 2255 relief Ground 1 in its entirety; Grounds 2a, 2c(i), 2c(iv), 2c(vi)-(xii) and 2d; and Ground 3 in its entirety. The Court **ORDERS** the Government to file a response to the remaining grounds for relief in the petitioner's

§ 2255 motion (Grounds 2b, 2c(ii), 2c(iii) and 2c(v)) within **THIRTY DAYS** of the date this order

is entered.   The Government shall, as part of its response, attach all relevant portions of the record

in the underlying criminal case.   To the extent the Government believes the Court has failed to

identify any ground for § 2255 relief set forth in Atkins' 98-page motion, which is not a model of

clarity, it should identify and address that ground in its response.   The Petitioner shall have

**FOURTEEN DAYS** to reply to the Government's response.

**IT IS SO ORDERED.**
**DATED:   June 25, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**