UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AHAMAD R. ATKINS,

     Petitioner,

     v.                                                  Civil No. 17-cv-144-JPG

UNITED STATES OF AMERICA,                           Criminal No 14-cr-40061-JPG

     Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Ahamad R. Atkins' motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). In its preliminary review of the motion, the Court has already dismissed several grounds for relief (Doc. 21). The Government has responded to the remaining grounds (Doc. 36), and Atkins has replied to that response (Doc. 52).[1] The Court also considers Atkins' motion for appointment of counsel and for a copy of the docket sheet (Doc. 27) and motion for judgment as a matter of law (Doc. 31).

## I.    Background

On September 24, 2014, the petitioner pled guilty without a plea agreement to one count of conspiracy to distribute crack cocaine and heroin from 2012 to May 2014 in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C) and 846. At the sentencing on May 18, 2015, the Court heard testimony from a number of witnesses regarding Atkins' relevant conduct and possession of a weapon. Considering the testimony, the Court found that Atkins' relevant conduct, consisting

---

[1] Atkins' reply addresses grounds for relief already resolved by the Court in its preliminary review order. Nothing Atkins states in his reply causes the Court to reconsider any of the issues it has already decided. Atkins also asserts new grounds for relief in his reply brief. The Court disregards those matters as those grounds were not contained in Atkins' original § 2255 motion and are therefore not at issue in this case.

of crack cocaine, powder cocaine and heroin, equated to 4,135.8 kilograms of marihuana equivalent, which established a base offense level of 32.   *See* U.S.S.G. § 2D1.1(c)(4).[2]   The Court raised the offense level by 2 points under U.S.S.G. § 2D1.1(b)(1) because it found Atkins had possessed a firearm in connection with his offense of conviction.   It further declined to award a 3-point offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) because it found Atkins had frivolously contested relevant conduct.   The total offense level of 34, combined with Atkins' criminal history category of III, yielded a guideline sentencing range of 188 to 235 months.   The Court sentenced Atkins to serve 216 months in prison, and written judgment was entered May 28, 2015.

The petitioner appealed his conviction to the United States Court of Appeals for the Seventh Circuit, which on March 18, 2016, dismissed the appeal as frivolous under the authority of *Anders v. California,* 386 U.S. 738 (1967).   *See United States v. Atkins*, 640 F. App'x 549 (7th Cir. 2016).   Atkins did not file a petition for a writ of *certiorari* to the United States Supreme Court.   He filed this timely § 2255 motion on February 10, 2017.[3]

## II.   § 2255 Motion

In his lengthy § 2255 motion, the petitioner raises the following claims: [4]

1. Prosecutorial misconduct in violation of the Fifth Amendment Due Process Clause for the following conduct:
   a. charging Atkins with federal drug charges involving crack cocaine and making other prosecutorial decisions because of his race (Atkins is black);

---

[2] All references in this order are to the 2014 version of the United States Sentencing Guidelines Manual, which the Court used in determining Atkins' sentencing guideline range.

[3] The copy of Atkins' § 2255 motion in the Court file has several pages out of order.   The Court has considered the pages in the proper order according to the numbering system Atkins has used at the bottom of the pages.

[4] To facilitate the orderly analysis of Atkins' claims, the Court numbers them differently than Atkins did in his motion.

     b. housing Atkins before trial in a jail that had no law library;

     c. tricking Atkins into not raising a racial profiling claim;

     d. requesting that the Court deny Atkins an offense level reduction for acceptance of responsibility;

     e. failing to give notice of evidence it planned to introduce at the sentencing hearing under Federal Rule of Evidence 404(b);

     f. calling Adam Calvert as a witness at the sentencing hearing without disclosing him as a witness ahead of time, in violation of Federal Rules of Criminal Procedure 32(i)(2) and 26.2;

     g. charging Atkins for a conspiracy that preceded the 4-month investigation of this case, introducing evidence of drug dealing from long before the charged conspiracy time frame, and presenting false or unreliable testimony to support relevant conduct;

     h. knowingly presenting false testimony of government agents Chris Kelly and Bernie Gard to the grand jury and to the Court at sentencing;

     i. failing to prove beyond a reasonable doubt that Atkins possessed a firearm in the course of the conspiracy and instead proffering clearly improbable and unreliable testimony; and

     j. prosecuting Atkins with a deficient indictment that failed to allege detailed facts and circumstances of the charged conspiracy, any overt act done in furtherance of the conspiracy, or the time frame of the conspiracy;

2. Ineffective assistance of counsel in violation of the Sixth Amendment in the following ways:

     a. Assistant Federal Public Defender ("AFPD") Judith Kuenneke, Atkins' counsel for his arraignment,[5] misled Atkins in her initial meeting with him into believing this was a case based on controlled drug buys and not "racial profiling," causing him to waive that defense;

     b. Eugene Howard, Atkins' counsel leading to and during his guilty plea, withheld discovery from Atkins before his guilty plea and coerced Atkins into entering a guilty plea without testing the Government's case;

     c. Rodney Holmes, Atkins' counsel leading to and during his sentencing,

        i. failed to review the prior case record when he began representing Atkins to discover prosecutorial misconduct and Kuenneke's ineffective assistance regarding waiver of a racial profiling defense and then failed to raise such a defense;

        ii. failed to file a motion to withdraw Atkins' guilty plea;

        iii. misled him into thinking he would receive a substantially lower sentence than

---

[5] As the Government has pointed out in its response and as reflected in the arraignment minutes, Assistant Federal Public Defender Jared Martin represented Atkins at his arraignment, not Kuenneke, as the Court stated in its prior order. The identity of the AFPD representing Atkins made no difference in the Court's prior analysis or its conclusion that Atkins has not pointed to any evidence of counsel's ineffectiveness.

he did;

    iv.  failed to object to prosecutorial misconduct relating to, and to move to dismiss, the deficient indictment;

    v.  failed to sufficiently consult with Atkins about objections to the Presentence Investigation Report's ("PSR") relevant conduct finding;

    vi.  failed to object to prosecutorial misconduct for failing to request an offense level reduction for acceptance of responsibility;

    vii.  failed to object to the lack of notice under Federal Rule of Evidence 404(b) of certain witnesses;

    viii.  failed to object to the Government's failure to disclose Adam Calvert as a witness ahead of the sentencing hearing in violation of Federal Rules of Criminal Procedure 32(i)(2) and 26.2;

    ix.  failed to object to the Government's introduction of evidence of conduct outside the dates of the investigation and/or the charged conspiracy to establish relevant conduct;

    x.  failed to object to the Government's knowing presentation of the false testimony of Chris Kelly and Bernie Gard to the grand jury and to the Court at sentencing;

    xi.  stipulated that Atkins possessed a firearm and failed to object to the 2-point offense level increase for possession of a firearm; and

    xii.  failed to act as counsel in good faith;

  d.  Elizabeth R. Pollock, Atkins' attorney on appeal, failed to raise on appeal the overinclusiveness of the Court's relevant conduct finding, the erroneous application of the 2-point offense level enhancement for possessing a firearm, the denial of a 3-point reduction for acceptance of responsibility, and the failure to allow Atkins to withdraw his guilty plea; and

3.  The Court erred in including uncharged and unrelated conduct outside the time frame of the charged conspiracy in calculating relevant conduct drug amounts and did not make the finding necessary to support its conclusion.

In an order dated June 25, 2018 (Doc. 21), the Court rejected the following grounds for relief:  Ground 1 in its entirety, Grounds 2a, 2c(i), 2c(iv), 2c(vi)-(xii) and 2d, and Ground 3 in its entirety.   The Court further ordered the Government to respond to the remaining grounds for relief: Grounds 2b, 2c(ii), 2c(iii) and 2c(v)).   Those grounds are the only ones remaining in this case:

2.  Ineffective assistance of counsel in violation of the Sixth Amendment in the following ways:

  b.  Eugene Howard, Atkins' counsel leading to and during his guilty plea, withheld

discovery from Atkins before his guilty plea and coerced Atkins into entering a guilty plea without testing the Government's case;

    c. Rodney Holmes, Atkins' counsel leading to and during his sentencing,

        ii. failed to file a motion to withdraw Atkins' guilty plea;

        iii. misled him into thinking he would receive a substantially lower sentence than he did;

        v. failed to sufficiently consult with Atkins about objections to the Presentence Investigation Report's ("PSR") relevant conduct finding;

## III.    Miscellaneous Motions

Before turning to the merits of Atkins' remaining grounds for relief, the Court addresses his other pending motions

### A.    Motion for Appointment of Counsel and for Copy of Docket Sheet (Doc. 27)

Whether to appoint an attorney to represent an indigent § 2255 petitioner is within the sound discretion of the district court. *Winsett v. Washington,* 130 F.3d 269, 281 (7th Cir. 1997). There is absolutely no right to appointment of counsel in a § 2255 case unless the absence of counsel would result in fundamental unfairness impinging on due process rights, *id.* (citing *La Clair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967)); *see* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section . . . 2255 of title 28."). Counsel is required to be appointed only "'if, given the difficulty of the case and the litigant's ability, [the petitioner] could not obtain justice without an attorney, [he] could not obtain a lawyer on [his] own, and [he] would have had a reasonable chance of winning with a lawyer at [his] side.'" *Winsett*, 130 F.3d at 281 (quoting *Forbes v. Edgar,* 112 F.3d 262, 264 (7th Cir. 1997)).

The Court has fully considered Atkins' request. First, it notes that he has not submitted evidence in support of his indigency. More importantly, however, the Court has reviewed his

voluminous filings and finds the he is competent to represent his own interests quite well. He understands the relevant legal principles and the application of those principles to the facts of his case. The Court does not believe the presence of a lawyer at his side would have a reasonable chance of making any difference to the outcome of this case. For these reasons, the Court finds the absence of counsel to represent Atkins in this proceeding would not result in any fundamental unfairness impinging on his due process rights. Accordingly, it will deny his motion for counsel.

As for Atkins' request for a copy of the docket sheet in his case, he asserts he has paid the sum requested but has not received the docket sheet. The Court has consulted with the Clerk's Office, which has no record of any payment from Atkins for a docket sheet. Because Atkins has submitted no evidence of payment, the Court declines to order the Clerk of Court to send him the docket sheet. However, the Court will deny this request without prejudice and will reconsider this issue if Atkins submits a new motion with acceptable proof of payment of the required fee.

B. <u>Motion for Judgment as a Matter of Law (Doc. 31)</u>

Atkins asks the Court to enter judgment in his favor because, on November 5, 2018, he had not received a copy of the Government's response brief that was due September 28, 2018. This motion is more akin to a motion for entry of default or for default judgment. In any case, it has no merit. The Government requested and received an extension of the September 28, 2018, deadline (Doc. 29), and it timely filed its response brief (after receiving one additional extension) on December 4, 2018. Because the Government's brief was filed in a timely manner, the Court will deny Atkins' motion for judgment as a matter of law (Doc. 31).

## IV. Analysis

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

In its preliminary review of Atkins' petition pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court set forth a lengthy and detailed description of the prior proceedings in Atkins' criminal case. The Court restates here the relevant portions of that description:

> 1.     The Indictment
>
> Atkins was indicted in May 2014 in the Southern District of Illinois on one count of conspiracy to distribute crack cocaine and heroin from 2012 to May 2014 in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C) and 846.
> * * *
> 3.     The Guilty Plea
>
> Howard appeared for Atkins, and in late August 2014 moved to continue the trial in part because of the voluminous discovery provided by the Government several days earlier, including 16 CDs of audio and video recordings, he needed to review and discuss with Atkins before deciding whether to negotiate a plea or prepare a trial defense. On September 24, 2014, Howard appeared with Atkins when he changed his plea to guilty in an "open" plea, that is, without a written agreement with the Government. The plea hearing substantially complied with Federal Rule of Criminal Procedure 11, *see United States v. Atkins*, 640 F. App'x 549, 552 (7th Cir. 2016).
>
> In that hearing, the Court informed Atkins that he could be imprisoned up

to 20 years if he pled guilty to the charged offense. Also at the hearing, Atkins stated under oath that he had discussed the charges with Howard and was fully satisfied with his counsel, representation and advice; that no threats or promises had been made to him in an effort to induce him to plead guilty (twice); that he was pleading guilty as his own free and voluntary act (twice); that he had talked with Howard about the sentencing guidelines and how they might apply in his case; and that he would not be allowed to come back later on and change his mind about pleading guilty. Atkins admitted that the factual basis asserted by the Government was correct and accurate:

> The Government would show that during the time frame alleged in the conspiracy, Mr. Atkins was involved with Co-Defendant Antuan Perkins, as well as others, in the distribution of crack cocaine and heroin in Williamson County, Illinois, primarily in the Colp area. Mr. Atkins and others would transport the drugs from northern Illinois to Williamson County for redistribution. Mr. Atkins would sometimes make the drug sales directly himself. On other occasions Mr. Atkins' associates would deliver the drugs. We would have witnesses who would testify that Mr. Atkins distributed crack cocaine and heroin from multiple residences in [the Village of] Colp, [Illinois,] including the residences of David Robinson and Donald Taylor, a/k/a Pumpkin. Mr. Atkins would sometimes provide Robinson and Taylor with crack cocaine, heroin or cash in return for the use of their residences. In addition, sometimes Mr. Atkins left drugs at Mr. Taylor's residence for Taylor to sell. When Mr. Atkins was not available to sell the crack cocaine or heroin, he would allow one of his associates to use his cell phone in order to conduct the drug sales. On multiple occasions Mr. Atkins sold crack cocaine or heroin to a confidential source working for law enforcement. During one particular transaction on . . . March 14, 2014, during a controlled purchase, the confidential source ordered crack and heroin from Co-Defendant Perkins. Mr. Atkins and Perkins arrived together at the deal, the confidential source gave the money to Atkins, and Atkins obtained additional crack cocaine from Perkins before handing both the crack cocaine and heroin to the confidential source. And, again, we would show these events occurred in Williamson County, which is within the southern district of Illinois.

Plea Tr. 8-10 (Case No. 14-cr-40061-JPG, Doc. 93). The Court accepted Atkins' guilty plea, found that he had knowingly, voluntarily and competently entered into that plea, adjudged him guilty of conspiracy to distribute crack cocaine and heroin, and set a sentencing hearing.

4.    <u>The Sentencing</u>

Less than a month after Atkins pled guilty and before Atkins had spoken with a representative of the Probation Office in connection with preparation of his PSR, Howard notified the Court that Atkins no longer wanted Howard to represent him. The Court held a hearing on the matter on November 4, 2014. At that hearing, Atkins indicated he was dissatisfied with Howard's representation of him before his guilty plea. Atkins thought Howard should have explained the notion of relevant conduct better and should have showed him more discovery before he decided to plead guilty. The Court asked Atkins, "Are you wanting to withdraw your plea of guilty and go to trial?" and Atkins responded, "No, I don't, sir." Mot. Hrg. Tr. 12 (Case No. 14-cr-40061-JPG, Doc. 94). The Court allowed Howard to withdraw and appointed Holmes to replace him.

Holmes appeared for Atkins and continued to prepare for sentencing. On January 21, 2015, the Probation Office filed the initial PSR (Case No. 14-cr-40061-JPG, Doc. 47). The PSR revealed that law enforcement had been investigating Atkins' co-defendant Antuan Perkins since at least 2012 and that information obtained from Perkins at that time showed a connection with Atkins. The PSR further revealed that in November 2013, a confidential source ("CS") gave law enforcement information tying Atkins to drug distribution and reported he had purchased drugs from Atkins since 2007. The PSR also summarized statements given from December 2013 to May 2014 by other named individuals, including Adam Calvert, and three other CSs regarding Atkins' drug distribution organization and/or possession of firearms in connection with his drug activities. The PSR stated that in March 2014 Atkins called a CS looking to get a gun because two of his had been stolen. Several days later the CS told Atkins he could get three small guns, but Akins said he needed a bigger gun. After Atkins' arrest, a fourth CS reported he had purchased heroin from Atkins. The PSR described eight controlled buys from Atkins or his associates from December 2013 to March 2014 involving approximately 9.3 grams of crack cocaine and 1.1 grams of heroin.

The PSR concluded that Atkins' relevant conduct was 4,096.8 [kilo]grams[6] of marihuana equivalent (comprising cocaine base, powder cocaine and heroin), that he possessed a dangerous weapon, that he timely accepted responsibility for his criminal conduct, yielding a total offense level of 31. The PSR further found Atkins had 9 criminal history points and was therefore in category IV. His guideline sentencing range was 151 to 188 months in prison.

In early February 2015, Atkins wrote a letter to the Court complaining that he was not able to have his discovery, that he had only reviewed it once on Holmes' laptop computer, and that he had no access to a law library while he was housed at the White County Jail (Case No. 14-cr-40061-JPG, Doc. 49). The

---

[6] The Court's prior order erroneously stated that the PSR found Atkins' relevant conduct to be "4,096.8 grams." This was a typographical error; the amount should have been stated in kilograms.

letter was stricken because Atkins filed it *pro se* while he was represented by counsel.

On the same day the Court received Atkins' letter, Holmes filed objections to the PSR (Case No. 14-cr-40061-JPG, Doc. 50). He claimed much of the relevant conduct finding was based on unreliable, uncorroborated information and proposed vastly lower relevant conduct as realistic amounts. He also denied certain allegations of possessing a firearm in connection with his offense and complained that he could not take a position on some of his relevant conduct because it was reported by unidentified CSs.

The record in this case establishes that around February 12, 2015,[7] the Government identified three unnamed CSs to Holmes, who shared that information with Atkins by letter dated the following day and asked for information from him about drugs he sold to them, if any (Doc. 1-1 at 2). In response to correspondence from Atkins, the Court held a status hearing on February 19, 2015. Atkins told the Court that before he pled guilty, he thought he was pleading guilty to "the evidence that was glued to the tape," that is presumably, only the drugs purchased in the controlled buys. He complained that he had pled guilty under a misunderstanding about the significance of relevant conduct and pled guilty simply because Howard told him to. He also complained that he had only been able to review the discovery one time, that he had not been able to research his case, and that much of the information in the PSR was false. The Court asked Atkins, "Are you wanting to withdraw your plea of guilty and go to trial?" and Atkins responded, "No," that he was not ready for trial. Status Hrg. Tr. 5 (Case No. 14-cr-40061-JPG, Doc. 108). The Court then repeated the question, and Atkins responded, "Yeah, I want to withdraw my plea of guilty and I want to go over my things, man, and go to trial, how it's supposed to be, and then time for me to go to trial." Status Hrg. Tr. 6 (Case No. 14-cr-40061-JPG, Doc. 108). Because Atkins seemed particularly concerned with only having reviewed the discovery one time, the Court directed Holmes to review the discovery again with Atkins and to file a motion to withdraw Atkins' plea if he requested.

In March 2015, Holmes filed amended objections to the PSR (Case No. 14-cr-40061-JPG, Doc. 54) in which he continued to object to relevant conduct and the firearm enhancement on the same general grounds as the original objection and continued to propose relevant conduct amounts vastly lower than those in the PSR. The following week, Holmes filed a motion for a downward variance based on Atkins' personal characteristics and background (Case No. 14-cr-40061-JPG, Doc. 57). By letter dated March 27, 2015, Holmes advised Atkins that if the Court sustained his objections to the PSR, he would ask the Court to vary downward to a 48 or 60 month sentence, which he thought was reasonable

---

[7] The letter is actually dated 2014, but it is clear from the context that it should have been dated 2015. In February 2014, Atkins had not yet been arrested and Holmes had not yet begun to represent him.

(Doc. 1-1 at 5).

On April 23, 2015, the Court held another status conference in preparation for sentencing and to address a potential conflict of interest presented by Holmes' plans to begin working for a United States Attorney's Office in another district (Case No. 14-cr-40061-JPG, Doc. 95). At that hearing, Atkins waived the conflict and confirmed that he wanted to proceed with sentencing and did not want to withdraw his guilty plea:

> THE COURT: Okay. Mr. Atkins, do you wish to proceed with the sentencing?
>
> DEFENDANT ATKINS: Yes.
>
> THE COURT: You do. You do not wish to withdraw your plea?
>
> DEFENDANT ATKINS: No.
>
> THE COURT: Okay. This is after your discussions with your attorney, Mr. Holmes?
>
> DEFENDANT ATKINS: Yes.

Status Hrg. Tr. 8 (Case No. 14-cr-40061-JPG, Doc. 95).

On May 13, 2015, the Probation Office issued the First Revised PSR (Case No. 14-cr-40061-JPG, Doc. 66) in which Atkins' criminal history category was reduced from IV to III because the statute of offense for two prior convictions was found unconstitutional. The change resulted in a recommended guideline range of 135 to 168 months. The Probation Office's addendum to the First Revised PSR, also issued May 13, 2015, addressed Atkins' objections and indicated that the Government considered Atkins' objections inconsistent with acceptance of responsibility for his offense, placing a 3-point offense level reduction under U.S.S.G. § 3E1.1 at risk.

The Court held a lengthy sentencing hearing on May 18, 2015. At the beginning of the hearing, the Court made sure Atkins and Holmes had discussed the risk of losing the acceptance of responsibility [reduction] by persisting in relevant conduct objections. At the hearing, the Court heard testimony from Adam Calvert, Matt Davis, and Paul David Irby (all of whom testified they had purchased drugs from Atkins and had seen him with one or more guns) and found them credible as to their testimony. It also heard testimony from Chris Kelly (a law enforcement officer who testified he had interviewed other individuals who had purchased drugs from Atkins and/or had seen him with a gun) and Bernie Gard (a law enforcement officer involved in the controlled buys from Atkins). The Court overruled Atkins' objections, found Atkins' relevant conduct (consisting of cocaine base, powder cocaine and heroin) equated to 4,135.8

kilograms of marihuana equivalent, which established a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4).   In settling on this amount, the Court reduced the drug amounts supported by the testimony by a month's worth to account for the probability that Atkins was likely out of town for at least some of the time covered by the testimony.

The Court also imposed a 2-point enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with his drug crime, overruling Atkins' objection to the enhancement.   This conclusion was based in part on the multiple drug customers who saw Atkins with a gun or heard him say he had possessed a gun plus a recorded conversation in which Atkins sought to purchase a gun through Davis.

The Court further declined to award a 3-point offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) because it found Atkins had frivolously contested relevant conduct.   Specifically, it accepted the Government's argument that Atkins was not simply arguing for lower relevant conduct by some reasonable amount to account for, for example, vacations or trips to obtain more drugs (which the Court ultimately did account for) but that he was denying responsibility for the vast majority of the drug relevant conduct and denying his possession of a weapon in connection with his drug dealing despite numerous drug customers who stated otherwise.

With the gun enhancement and without the acceptance of responsibility reduction, the total offense level was 34.   Combined with Atkins' criminal history category of III, that yielded a guideline sentencing range of 188 to 235 months.   The Court denied Atkins' motion for a downward variance and sentenced him to serve 216 months in prison.

5.    <u>The Appeal</u>

. . . .   The Court of Appeals agreed that Atkins could make no non-frivolous challenge to (1) whether his guilty plea was knowing and voluntary, (2) the imposition of the 2-level enhancement for possession of a firearm, (3) the denial of a 3-point reduction for acceptance of responsibility, or (4) the relevant conduct drug quantity finding.

Mem. & Order 5-13 (Doc. 21).

## V.      **Analysis**

In all of Atkins' remaining arguments, he asserts he was deprived of the right to effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution.   The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to

assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel.   *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).   The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance.   *Id.*   Counsel's performance should be judged as a whole and need not be perfect so long as it was competent. *Groves*, 755 F.3d at 593.   "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."   *Harrington v. Richter*, 562 U.S. 86, 105 (2011).   The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *accord Groves*, 755 F.3d at 591.   Counsel's performance must be evaluated keeping in mind that an attorney's strategies are a matter of professional judgment and often turn on facts not contained in the record.   *Strickland*, 466 U.S. at 689.   The Court cannot become a "Monday morning quarterback."   *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694); *accord Groves*, 755 F.3d at 591. The plaintiff need not show that counsel's deficient performance "more likely than not altered the outcome," but that the likelihood of a different result was "substantial, not just conceivable." *Harrington*, 562 U.S. at 111-12.

The Court addresses each of Atkins' remaining alleged instance of ineffectiveness in turn. To the extent additional fact are relevant, the Court will note them in its discussion.

A.     Howard:   Guilty Plea (Ground 2b)

Howard represented Atkins from July 23, 2014, to November 4, 2014, during which time Atkins pled guilty and began to prepare for sentencing. Atkins claims that Howard withheld discovery from him before his guilty plea and, in fact, only played two of the sixteen videotapes of controlled buys for him while meeting with him at the jail on August 24, 2014, then said he would play only one more because he had to leave for a family commitment. He says Howard told him before the change of plea hearing just to plead guilty and get it over with so he could get back to his children sooner. Atkins further accuses Howard of misleading the Court at the November 4, 2014, status hearing by saying he had outlined the evidence against Atkins and discussed it with him at that jail visit. He claims Howard told him that if the jury saw one recorded sale on videotape it would convict him, and that if he knew any of the people in the video, the Government could not use it against him. He also claims Howard failed to tell him

certain individuals[8] could be witnesses at his trial.

Howard has a different recollection of the August 24, 2014, jail visit. He claims that in that two-hour visit he brought the discovery relevant to Atkins to the meeting and discussed the charge, the possible statutory penalties, an outline of the discovery, the Government's case against Atkins, and potential Government witnesses against Atkins. Howard claims he played three of the sixteen videotapes for Atkins before Atkins said he had seen enough and did not want to see any more of them. Atkins further declined to review copies of Rule 16 discovery reports Howard had brought. He then discussed with Atkins his options of pleading guilty or going to trial, and Atkins told Howard he was not looking to go to trial and wanted to explore a plea where he could contest drug amounts instead. Howard recalls two telephone conversations with Atkins on August 29, 2014, where they again discussed entering a guilty plea and potential guideline sentencing ranges.

Howard followed up with a ten-page letter to Atkins dated September 3, 2014 (Doc. 36-2). That letter listed the court settings, set out Atkins' options for pleading guilty or going to trial, various sentencing guideline scenarios and possible sentences should he enter an open plea of guilty. Howard specifically mentioned that Adam Calvert would provide evidence supporting Atkins' relevant conduct, but that his credibility could be challenged. In that letter, Howard reiterated his opinion that the Government had strong evidence against Atkins, asked whether Atkins wished to plead guilty or proceed to trial, and reminded Atkins that he alone could make that decision. In response to the letter, Atkins told Howard to set up a date to plead

---

[8] Those individuals—David Robinson, David Irby, Matt Davis, and Adam Calvert—either directly or indirectly provided evidence of Atkins' relevant conduct used at sentencing.

guilty.

Howard describes telephone calls he had with Atkins on September 9, 2014, and September 11, 2014, in which they discussed the option to enter a guilty plea and whether it would be a cooperating plea or an open plea. According to Howard, in the latter call, Atkins informed him he wanted to enter into an open plea and asked him to schedule a change of plea hearing. Howard received a follow-up letter from Atkins on September 17, 2017, in which Atkins requesting a change of plea hearing as soon as possible (Doc. 36-3). Howard scheduled the hearing for September 24, 2014. Howard states that he spoke with Atkins by phone again on September 22, 2014, to discuss the change of plea hearing and supplemental discovery that might have an impact on his relevant conduct. Atkins pled guilty on September 24, 2014.

Howard recounts that on October 7, 2014, Atkins informed him by telephone that he would not cooperate with the Probation Office's PSR interview and that he wanted new counsel. On October 10, 2014, Howard received a follow-up letter from Atkins reiterating that position. Howard subsequently asked the Court for leave to withdraw, which the Court allowed on November 4, 2014. The following day he gave Atkins' file to Holmes, Atkins' new counsel.

The Government argues that Atkins cannot show prejudice from Howard's allegedly inadequate review of the discovery with him because, after reviewing the discovery twice with his subsequent counsel Holmes, he declined to move to withdraw his guilty plea. That failure further shows that any alleged coercion by Howard was not a decisive factor in Atkins' decision to plead guilty. The Government also notes that Howard's September 3, 2014, letter to Atkins is clear that Atkins alone made the decision to plead guilty, and that Atkins' statements in his Rule 11 plea colloquy confirm that he was not threatened or coerced into pleading guilty, that he did

so understanding the nature of the charge and the possible punishments, and that he was satisfied with Howard's performance as counsel.

The Government further argues that Howard was not deficient in his performance as Atkins' counsel.   Specifically with regard to the review of discovery, all parties agree that Howard did not show all sixteen controlled buy videos to Atkins, and Atkins has not contradicted Howard's statement that this was at Atkins' request.   Further, there is no dispute that Howard was prepared to go over all the discovery in detail with Atkins, but that before that could be done, Atkins announced he wanted to plead guilty.   Finally, the Government points to Howard's September 3, 2014, letter to Atkins and the plea colloquy to counter any suggestion of coercion.

The Court declines to grant Atkins relief based on alleged instances of ineffective assistance of counsel by Howard because of a lack of prejudice flowing from any deficient performance.   In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to show prejudice under the *Strickland* test, the petitioner must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial.   *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).   Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea.   *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007).   To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough.   *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v.*

*Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice."). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

Atkins' current assertion that he would not have pled guilty had Howard reviewed all of the discovery beforehand is belied by subsequent events. After Howard was relieved of the duty of representing Atkins and Holmes took his place, Holmes reviewed the discovery with Atkins, as Atkins admitted during the February 19, 2015, status conference and in his affidavit in support of his § 2255 motion. At the February 19, 2015 status conference, Atkins indicated he did not want to withdraw his guilty plea because he was not ready for trial. He then told the Court something different, that he wanted to review his discovery and then go to trial. Faced with Atkins' apparent indecision, the Court directed Holmes to review the discovery a second time with Atkins and, if Atkins wanted to withdraw his plea following that review, to file a motion. Holmes never filed any such motion, and the Court confirmed with Atkins at the April 23, 2015, status conference that he did not want to withdraw his guilty plea even having reviewed the discovery with Holmes twice. The objective evidence in the record shows that Atkins' complete review the discovery with counsel was not a decisive factor in his decision to plead guilty.[9] Atkins offers nothing now to support what he claims he would have done except the kind of *post*

---

[9] The suggestion that Holmes did not, in fact, review all of the discovery with Atkins is addressed in the section of this order discussing Holmes' effectiveness as counsel.

*hoc* assertions the Supreme Court in *Lee* warned against.   For these reasons, the Court finds Atkins suffered no prejudice from any deficiency in Howard's review of the evidence in this case with Atkins.

To the extent Atkins claims Howard coerced him into pleading guilty, again the contemporaneous evidence does not support those assertions.   Howard asserts that since his August 24, 2014, meeting with Atkins, Atkins did not want to go to trial but wanted to plead guilty in a way where he would not be obligated to cooperate with the Government and could still contest relevant conduct at sentencing.   Despite these indications that Atkins wanted to plead guilty, Howard continued to cover all bases in his incredibly thorough September 3, 2014, letter.   That letter included explanations of the role of relevant conduct and Howard's estimate that Atkins' relevant conduct, if he was found guilty, would be from 1,000 to 3,000 kilograms of marihuana equivalent.[10]   It also identified the main witnesses to relevant conduct as Calvert and the CS and discussed that there was an arguable basis for challenging their credibility.   Howard advised Atkins that he had two options if he did not want to cooperate with the Government: (1) an open plea or (2) trial.   Howard made crystal clear in the letter that the decision of which option to take was Atkins' to make, although he advised Atkins that he believed the Government had strong evidence against him and that a guilty plea was his best option to minimize his

---

[10] It is worth noting that Howard's base offense level estimate under U.S.S.G. § 2D1.1 based on Atkins' relevant conduct, while not completely accurate in retrospect, was reasonable and only 2 points lower than the base offense level the Court ultimately found.   Howard also discussed the various sentencing ranges that would apply if the Court disbelieved the witnesses to relevant conduct and applied various enhancements and reductions.   This satisfied Howard's duty to provide Atkins with a reasonably accurate estimate of his likely sentence when he was contemplating a guilty plea.   *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. Barnes*, 83 F.3d 934, 939-40 (7th Cir. 1996).

sentence.    Atkins decided to change his plea, which was reflected in the letter Howard received from him on September 17, 2014, asking to accelerate the plea to a date earlier than the next court hearing so he could get home to his children earlier.

It is clear that any statement Howard made to Atkins prior to the September 24, 2014, plea about "getting this over with" was not coercion but an effort to achieve Atkins' aim of pleading guilty and getting back to his children as soon as possible.    Indeed, moments after any such statement, Atkins confirmed under oath that no threats or promises had been made to induce him to plead guilty, that he was doing so as his own free and voluntary act, and that he was satisfied with Howard's performance as counsel.    He also stated under oath that he understood the nature of the conspiracy charge, the possible penalties, and that he did not have to plead guilty but could instead have a trial.    These sworn statements by Atkins at the plea colloquy are "entitled to 'a presumption of verity.'"    *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004) (quoting *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000)); *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).    The petitioner bears a heavy burden of overcoming that presumption.    *See United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012).    Atkins has offered nothing but his own self-serving statements now that what he said back then was not true and that he was actually coerced by Howard into pleading guilty.    Furthermore, his current statements are belied by the fact that he declined to ask to withdraw his plea when later given the opportunity to do so.

The contemporaneous objective evidence shows no hint of coercion by Howard or of prejudice from Howard's conduct.    It may have been true that Atkins felt compelled to plead guilty, but that was likely due to the legal predicament he was in, not Howard's representation.

Atkins faced two bad choices, Howard laid out his options and the consequences of each, and Atkins picked the one that appeared desirable at that time. He cannot now blame that choice on Howard. Since Atkins has not pointed to any objective evidence that he would not have pled guilty had Howard advised him differently, the Court rejects this argument as a ground for § 2255 relief.

Finally, to the extent that Atkins claims Howard was constitutionally ineffective for failing to file motions to challenge the Government's case, he has not describe any basis for reasonable counsel to have filed a motion or what motion Howard could have filed that would have had a reasonable chance of succeeding such that Atkins would have decided not to plead guilty.

For these reasons, the Court rejects Ground 2b as a basis for § 2255 relief.

B.     Holmes

Holmes represented Atkins from November 5, 2014, immediately after Howard was allowed to withdraw, until he was relieved from this duty by the Court of Appeals on June 9, 2015.

1.     Motion to Withdraw Guilty Plea (Ground 2c(ii))

Atkins claims that Holmes was constitutionally ineffective when he failed to file a motion to withdraw the guilty plea after Atkins told him at and before the February 19, 2015, status hearing that Howard had coerced him into pleading guilty without reviewing the discovery with him.

In response, the Government argues that Atkins has not alleged he asked Holmes to file a motion to withdraw his plea after Holmes twice reviewed his discovery with him. It further

argues that he cannot show prejudice from Holmes' failure to file such a motion where Atkins himself informed the Court on April 23, 2015, that he did not wish to withdraw his plea. Indeed, Holmes states in his affidavit that Atkins originally told him he wanted to withdraw his guilty plea, but that after Holmes reviewed the evidence with him twice and advised him that there was a great likelihood a jury would convict him and he would receive a harsher sentence than if if plead guilty, Atkins decided not to withdraw his guilty plea. Additionally, the Government asserts that there is no reasonable possibility the Court would have granted a motion to withdraw in light of the plea colloquy's substantial compliance with Rule 11, as noted by the Court of Appeals on Atkins' direct appeal. *See United States v. Atkins*, F. App'x 549, 552 (7th Cir. 2016).

Atkins has pointed to no deficient performance by Holmes with respect to filing a motion to withdraw his guilty plea. It is true that Atkins said before and at the February 19, 2015, status hearing that he wanted to withdraw his plea because he had been coerced by Howard into pleading guilty without reviewing all of the discovery. However, the Court decided to remedy this problem by directing Holmes to review the discovery with Atkins, who could then decide, with full knowledge of the evidence against him and further advice of counsel, whether to stick with his guilty plea or try to withdraw it.

Atkins' suggestion in the current briefing that Holmes did not, in fact, review all the discovery with him is a non-starter. He has not pointed to any piece of discovery that Holmes had received from Howard or the Government yet failed to review with him before he confirmed to the Court on April 23, 2015, that he did not want to withdraw his guilty plea.[11] When a

---

[11] Atkins points to one instance at the sentencing hearing where Holmes indicates he had not

petitioner accuses his attorney of deficient performance, he must point to sufficiently precise information about what the attorney failed to do.   *See Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (where petitioner accuses counsel of failing to adequately investigate, petitioner must specify what the attorney would have uncovered in an adequate investigation and why the failure to uncover it was prejudicial).   Atkins blithely speculates here that Holmes failed to show him some discovery, but he does not identify what Holmes failed to show him and how it would have had a reasonable probability of causing him to ask to withdraw his guilty plea had he known of it.

On the contrary, the objective evidence shows that Atkins decided to stick with his guilty plea.   There is no suggestion that, after reviewing the discovery, he asked Holmes to file a motion to withdraw his plea.   In fact, on the record at the April 23, 2015, status conference, he confirmed that he did not wish to do so.   It is not deficient for counsel to decline to file a motion to withdraw his client's guilty plea where the client does not want to withdraw that plea. Holmes was simply not deficient in this regard.

### 2. Sentence Estimate (Ground 2c(iii))

Atkins claims that Holmes was constitutionally ineffective when he assured him in writing that he would get a 48-month sentence.

The Government argues that the writings to which Atkins refers do not promise or guarantee a 48-month sentence but simply describe a sentence Holmes was prepared to argue

---

disclosed the name of CS Matt Davis to Atkins.   Sent. Tr. 76 (Doc. 41).   Holmes was actually addressing what he thought was an implication that Atkins was responsible for an assault on Davis that occurred during the life of Atkins' case.   Holmes stated at the hearing that he had not yet disclosed Davis's name to Atkins *at the time of the assault*, not that he never disclosed the name to him.   In fact, a letter dated February 13, 2015, shows he did (Doc. 1-1 at 2).

that the Court should give. Indeed, Holmes explained to Atkins by letter that he arrived at his request for 48 months by counting all the drugs Atkins admitted to Holmes that he had personally sold, which would result in a guideline sentencing range of 70 to 87 months, and then asking for a downward departure to 48 months. Thus, the prospect of a 48-month sentence was conceivable, but presupposed that the Court would sustain Atkins' objections to every drug amount for which he claimed no responsibility, regardless of the strength of the objection, *and* that the Court would grant a motion for downward departure.

As a preliminary matter, as noted earlier in a footnote, a defendant is entitled to a reasonable estimate of his likely sentence when he is contemplating a guilty plea. *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. Barnes*, 83 F.3d 934, 939-40 (7th Cir. 1996). Howard provided this reasonable estimate to Atkins prior to his guilty plea. The reasonableness of Howard's estimate was borne out by the PSR and the Court's ultimate sentence.

As for Holmes communications to Atkins regarding his possible sentence, to put them in context, the Court sets forth the timeline of such communications.

On January 21, 2015, the Probation Office issued the initial PSR (Case No. 14-cr-40061-JPG, Doc. 47) finding Atkins' base offense level ("BOL") was 32 under U.S.S.G. § 2D1.1 and should be enhanced by 2 points under U.S.S.G. § 2D1.1(b)(1) for possession of a weapon and reduced by 3 points under U.S.S.G. § 3E1.1 for acceptance of responsibility, for a total offense level ("TOL") of 31. In combination with his criminal history category of IV, his TOL yielded a guideline sentencing range of 151 to 188 months in prison, well under the statutory maximum sentence of 20 years. *See* 21 U.S.C. § 841(b)(1)(C).

In response, on February 6, 2015, Holmes filed objections (Case No. 14-cr-40061-JPG, Doc. 50) in which he contested all drug amounts for which Atkins had denied responsibility when they had reviewed the initial PSR together. Based on the amounts for which Atkins took responsibility, Holmes proposed a BOL of 24 and TOL of 23, which resulted in a guideline sentencing range of 70 to 87 months in prison. In a letter dated March 12, 2015 (Doc. 36-5), Holmes explained to Atkins that he objected to all quantities Atkins had denied except one specific quantity for which there was evidence in a recorded telephone call. On March 17, 2015, Holmes filed amended objections (Case No. 14-cr-40061-JPG, Doc. 54) proposing the same alternate guideline range calculation as his initial objection.

About a week later, on March 25, 2015, he also filed a motion for a downward departure (Case No. 14-cr-40061-JPG, Doc. 57) that did not request any specific level of departure. In a letter dated March 27, 2015 (Doc. 1-1 at 5), Holmes explained to Atkins:

> As we discussed, at sentencing *we will argue* our objections to lower the drug quantity. Then, *I will argue* the motion I filed *to try to get the judge* to go even lower than the 70 months that we came up with *if the objections are granted*. I will probably *request a 48 or 60 month sentence*, which I think is reasonable, unless you want me to ask for lower. Realistically, I do not see the judge going lower than a four or five year sentence under any circumstance.

(emphasis added).

In its response to Atkins' objections to the initial PSR (Case No. 14-cr-40061-JPG, Doc. 59), the Government asked the Court to deny Atkins the 3-level offense level reduction for acceptance of responsibility because his objection to so much relevant conduct was inconsistent with acceptance of responsibility. In a letter dated April 14, 2015 (Doc. 36-7), Holmes told Atkins about the Government's position on acceptance of responsibility and that he would reply arguing that Atkins was, in fact, taking responsibility but that he simply disagreed with the drug

amounts in the PSR.

In a letter to Atkins dated April 15, 2015 (Doc. 1-1 at 6), Holmes again explained how he arrived at the sentencing calculations proposed in the objections. He specifically stated, "I hope this answers your question as to how I got to level 23 and the 70-87 month range. *I will then ask the judge* to go down to 48 months, which is 4 years. I can ask him to go down to three years, but like I said, based on my experience, I do not think he will go down to three years" (emphasis added).

Having gotten a reasonably accurate sentencing estimate from Howard, knowing the PSR's sentencing range recommendation of 151 to 188 months in prison, and knowing that Holmes would *argue* for a lower sentencing range and would *ask* the judge to go below that range, Atkins confirmed on April 23, 2015, that he did not want to withdraw his guilty plea. Status Hrg. Tr. 8 (Doc. 40).

An amended PSR (Case No. 14-cr-40061-JPG, Doc. 66) entered on May 13, 2015, lowered the recommended criminal history category to III, which resulted in a lowered sentencing range of 135 to 168 months. In a letter dated May 14, 2015 (Doc. 1-1 at 7), Holmes informed Atkins of this lowered guideline range.

On May 18, 2015, the Court heard the parties' evidence and arguments regarding relevant conduct as well as potential enhancements and reductions. It rejected Atkins' objections, declined to reduce his offense level for acceptance of responsibility, denied his motion for a downward departure, and sentenced him to serve 216 months in prison.[12]

---

[12] In retrospect, it appears Atkins did not get a benefit from pleading guilty. However, at the time he decided to plead guilty and decided not to ask to withdraw that plea, he was still eligible for a 3-point offense level reduction for acceptance of responsibility. This would have lowered

Given this sequence of events, the Court cannot find Holmes was deficient in communicating to Atkins information about the length of his sentence. Nothing Holmes wrote to Atkins in any way promised a 48-month sentence. Each reference to a sentence was couched in terms indicating Holmes *would argue* to the Court or *would ask* the Court for a specific sentence, which might be available *if the Court sustained the objections*. Atkins may have succumbed to wishful thinking in interpreting Holmes' goal as an assurance, but there was no reasonable basis to construe it that way. Nowhere did Holmes promise Atkins a 48-month sentence. Instead, he kept him apprized of the relevant events leading up to sentencing and the arguments that each side would make at the sentencing hearing. Indeed, as Holmes told Atkins he would and as noted in the Court's earlier order in this case, Holmes ably and vigorously challenged the evidence of relevant conduct at Atkins' sentencing. He was somewhat successful in getting the Court to discount the drug amounts witnesses pinned on Atkins, although he was not successful in convincing the Court that the witnesses were entirely incredible.

In sum, Holmes functioned well within the range of reasonably competent counsel. Consequently, Atkins is not entitled to § 2255 relief on this basis.

### 3. Consultation about PSR Objections (Ground 2c(v))

Atkins alleges that Holmes did not sufficiently consult with him about objections to the PSR.

In response, the Government notes that Holmes filed objections for Atkins to nearly all of

---

his sentencing range below the range that would likely have applied had he gone to trial and been found guilty. Thus, Howard's and Holmes' advice to plead guilty was reasonable at the time and reflected competent legal advice.

the relevant conduct found in the PSR.   As noted above Holmes told Atkins by letter that he objected (within professional boundaries) to every quantity of drugs with which Atkins disagreed when they had reviewed the PSR together.   He further stated by letter that he advised Atkins not to assert that some sales labeled as heroin were actually crack cocaine because crack cocaine actually carried a heavier sentence than heroin.   He further advised Atkins not to object to the weapon enhancement and that he may jeopardize a 3-point reduction for acceptance of responsibility by making certain objections to relevant conduct.

When a § 2255 petitioner faults his attorney for failing to object or to present evidence, he bears the burden of demonstrating what evidence or argument the attorney should have presented and that the presentation of such evidence would have had a reasonable probability of changing the result.   *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *see, e.g., United States v. Stuart*, 773 F.3d 849, 852-53 (7th Cir. 2014).   Thus, to prevail in his argument on this matter, Atkins must show what evidence or argument would have come about had Holmes consulted with him differently about objections to the PSR.   He must further show that such evidence or argument would have had a reasonable probability of changing the outcome of the sentencing proceeding.   However, Atkins has not pointed to anything Holmes would have learned or could have argued differently in opposition to the PSR had he consulted with Atkins further about objections to the PSR. Without specifying what he would have found or learned, it is impossible for Atkins to show such additional or different consultation would have had a reasonable chance of changing the Court's ultimate ruling.

Since Atkins has alleged nothing showing that Holmes was deficient in consulting with

Atkins about objections to the PSR or that additional consultation would have produced something that would have had a reasonable chance of changing the Court's sentencing decision, he is not entitled to § 2255 relief on this basis.

C.  Cumulative Error

Atkins has not specifically argued that the attorney errors he asserts in his case, when viewed together, demonstrate that he did not receive constitutionally effective representation. Nevertheless, the Court considers this question. After carefully reviewing the record, the Court finds that there is no reasonable probability that, but for the alleged errors of counsel in this case, even if considered in combination, the result of the proceedings would have been different.

**VI.  Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001). To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003). The Court finds that Atkins has not made such a showing and, accordingly, declines to issue a certificate of appealability.

## VII. Conclusion

For the foregoing reasons, the Court:

- **DENIES** Atkins' motion for appointment of counsel (part of Doc. 27);

- **DENIES without prejudice** Atkins' motion for a copy of docket sheet (part of Doc. 27);

- **DENIES** Atkins' motion for judgment as a matter of law, which the Court construes as a motion for entry of default or for default judgment (Doc. 31);

- **REJECTS** as a basis for § 2255 relief Grounds 2b, 2c(ii), 2c(iii) and 2c(v);

- **DENIES** Atkins' § 2255 motion in its entirety, having rejected all grounds for § 2255 relief in this and the Court's June 25, 2018, order (Doc. 21);

- **DECLINES** to issue a certificate of appealability; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   May 21, 2019**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**